Argued and submitted September 28, 2010, on appeal, reversed and remanded; on cross-appeal, affirmed March 23, petition for review denied August 18, 2011 (350 Or 574)

STATE OF OREGON,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

KARL WADE ROBERTS,
*Defendant-Respondent*
*Cross-Appellant.*

Baker County Circuit Court
07446; A138580

251 P3d 232

Jamie K. Contreras, Assistant Attorney General, argued the cause for appellant - cross-respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General. On the reply brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Shawn Evans Wiley, Chief Deputy Public Defender, argued the cause for respondent - cross-appellant. On the

brief were Peter Gartlan, Chief Defender, and Carolyn Bys, Deputy Public Defender, Office of Public Defense Services.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant in this case was charged with driving under the influence of intoxicants (DUII). Before trial, the court granted defendant's motion to suppress breath test evidence on the ground that the officer who administered the test did not follow required procedures when the testing instrument malfunctioned. However, the court refused to suppress other evidence, including results of field sobriety tests. The state appeals from the trial court's pretrial order suppressing the breath test evidence. Defendant cross-appeals, arguing that the police did not have probable cause to stop him for failure to drive within a lane, ORS 811.370(1), when he had merely crossed over the fog line twice. In defendant's view, the fog line "is not a demarcation of the lane but only a guide for drivers" and, therefore, the stop was unlawful. After briefing in this case was complete, we rejected an identical argument in *State v. Vanlom*, 232 Or App 492, 222 P3d 49 (2009) (holding that an officer who observed a vehicle drive onto the fog line had probable cause to stop the driver for violation of ORS 811.370), and, accordingly, we affirm on cross-appeal. However, because we disagree with defendant and conclude that the Intoxilyzer evidence card was "complete," we reverse and remand on appeal.

The relevant facts are undisputed. A Baker County Sheriff's deputy stopped defendant's vehicle after the deputy saw defendant cross the fog line twice and vary his speed for no apparent reason. The deputy testified that he smelled alcohol and suspected that defendant had been drinking. Upon questioning, defendant stated that he had had "a couple of beers" and agreed to perform field sobriety tests. After defendant completed the field sobriety tests, the deputy arrested him for DUII.

Later, at the jail, defendant agreed to take a breath test on the Intoxilyzer 5000. The machine itself showed that defendant's blood alcohol content was 0.08. However, the Intoxilyzer card did not print correctly from the machine. Although a card printed and listed the test date, test results, and information identifying the testing machine, the printout had small blank lines across it, making it difficult to read. For example, as the deputy described in his testimony, the

middle line was missing from the e's and the b's. In addition, the printed card did not show a middle line through the eights in the blood alcohol content or the machine identification number, which, for that reason, looked as though they could be zeros.[1] The deputy printed a second card, but the printout had the same problem. The deputy then contacted Oregon State Police to have them perform an internal check of the Intoxilyzer machine; they did not tell him to do anything further at that point. The Oregon State Police later confirmed, based on electronic test records, that the Intoxilyzer had registered defendant's blood alcohol content as 0.08. In addition, two days after defendant's breath test, the machine was tested by an Oregon State Police technician and "certified and determined to be accurate[.]"

Due to the problem with the printout, defendant moved for suppression of the breath test results. After a hearing, the trial court determined "that the breath test, equipment / procedure, did not conform to the Oregon Administrative Rules." For that reason, the court suppressed the breath test evidence.

On appeal, the state argues that the testing complied with the applicable administrative rule and that, in any event, "the printer problem did not jeopardize the accuracy of the result, and the court therefore should not have suppressed the test result." (Boldface omitted.) Defendant, on the other hand, asserts that the requirements of the administrative rule were not met and that the accuracy of the test results was jeopardized.

Pursuant to ORS 813.160(1)(b), to be valid, a chemical analysis of a person's breath must be "performed according to methods approved by the Department of State Police[.]" The approved methods for performing a chemical analysis of a person's breath on the Intoxilyzer 5000 are set

---

[1] The deputy testified about the printout of the blood alcohol content specifically, noting that the machine prints a diagonal line through the middle of zeros:

"Q And when you go over to the zero, what's claimed to be a zero on the BAC [blood alcohol content], how does that differ from the real zeros that are there on the other two lines?

"A It doesn't have a diagonal line in it."

forth in OAR 257-030-0070.[2] Pursuant to OAR 257-030-0070(4), the machine's testing sequence is as follows:

"(a) Diagnostics: The instrument will perform a complete diagnostic check on its components and operational standards. If all the operational parameters are proper, the instrument will proceed to the next step;

"(b) Air Blank: The instrument will draw in outside air to purge the unit of any alcohol or other material which may be present in the sample cell. It is also looking at the operational environment and analyzing for any possible contaminant which may be present in the room air. If all parameters are met, the instrument will proceed to the next step;

"(c) Subject Test: At this time the instrument will display 'Please Blow'. The subject is instructed on how to give a proper breath sample. The subject has approximately three minutes to comply with this request. The subject test phase has been completed and will proceed with the next step when:

"(A) The instrument has accepted the breath sample and displayed the result; or

"(B) The subject test is aborted by action of the operator or by the instrument; or

"(C) The three minute request period has lapsed; or

"(D) The operator has depressed the Start Test button to indicate a refusal.

"(d) Air Blank: This air blank is to purge the instrument of the collected sample and once again check the operational environment for any possible contaminants. If all parameters are proper, the instrument will print the testing sequence information and display 'Test Complete'. If the post sample check is improper the instrument will abort the test and an error message will be displayed;

---

[2] That rule sets forth protocol for conducting a breath test. That protocol includes the following steps: (1) using and completing a checklist; (2) ensuring that the subject has not taken anything by mouth for at least 15 minutes before the test; (3) turning on the machine and waiting for it to be ready to perform the test; (4) inserting a test record card; (5) instructing the subject on how to give a proper breath sample. OAR 257-030-0070(1) - (3).

"(e) Evidence Card: The final phase of the analysis is the printing of the evidence card. If all parameters and every operational aspect of the instrument were proper, a completed evidence card is received. *If at any time there was a malfunction, error or condition that would affect the validity of the test, or any section of the instrument was not in perfect working order, the test would have been aborted and a completed evidence card would not be received.*"

(Emphasis added.) OAR 257-030-0070(5), in turn, provides that a " '[c]ompleted' evidence card is one which indicates a breath test result, a refusal, or the presence of an interfering substance[.]"[3] On the other hand, if a subject does not provide a breath sample or blow with sufficient force or if the machine operator receives an error message, the machine will produce an incomplete evidence card and, under the administrative rule, the operator is to "restart the testing sequence" after taking any necessary action to correct the problem. OAR 257-030-0070(6).[4] In light of those rules, the

---

[3] OAR 257-030-0070(5) also provides detailed information regarding certain types of completed evidence cards:

"(c) If the subject did not provide an adequate breath sample within the three minute request period, the instrument will indicate 'Insufficient' and print an asterisk (*) before the 'Subject Test' result, and '*Insufficient Sample—Value printed was the highest obtained'. The value printed is an accurate measurement of the sample provided and is equal to or less than the subject's actual blood alcohol value;

"(d) If during the three minute request period the subject refuses, through some willful act, to follow the instructions to provide an adequate breath sample, the operator may depress the 'Start Test' button to terminate the breath test request phase. The instrument will indicate 'Refused' and print 'Subject Test Refused'. A printed test record card, as described in this subsection, is not required to document the operator's decision to terminate the breath test request phase as 'Refused'.

"(e) If the instrument detects the presence of acetone or other substances which could interfere with the instrument's ability to accurately measure the amount of ethyl alcohol in the breath, the message 'Interf Detected' will be displayed and the test will be aborted. The printout on the test record will indicate 'Invalid Test *Interferant Detected'. This is a completed test and the operator should not restart the testing sequence."

[4] That subsection of the rule provides:

"The following conditions will result in an incomplete evidence card:

"(a) If the subject did not provide a breath sample or blow with sufficient force to activate the breath pressure sensor at any time within the three minute request period, the instrument will indicate 'No Sample Given' and print an asterisk (*) before 'Subject Test' and '*No Sample Given'. If the evidence card indicates '*No Sample Given', the operator should restart the testing

issue on which this case turns is whether the Intoxilyzer 5000 returned a completed evidence card, as that term is defined in the rule. The state contends that, in spite of the printing problem, the evidence card was completed and the results of the test admissible. In defendant's view, however, the evidence card was incomplete, the officer failed to follow the protocol the rule requires once an incomplete evidence card is received, and the failure to comply with the rule renders the breath test results invalid. We agree with the state.

As noted, an evidence card that contains a breath test result is a "completed evidence card" pursuant to the administrative rule. Here, the evidence card that was printed is complete. It reflects results for all the testing steps: diagnostics, the first air blank, the subject test, and the second air blank. It contains no error message of any kind. That the printing problem makes the card difficult to read is immaterial. A card that reflects a breath test result is completed by definition, and the card in this case meets that definition. As well, as set forth in OAR 257-030-0070(4)(e), a completed evidence card (again, as that term is defined by the rule) is received only when the machine is working properly and, in the event of a malfunction within the machine that "would affect the validity of the test" a completed evidence card would not be produced. And because a completed evidence card was received from the Intoxilyzer 5000, the officer was not required to follow the additional protocol set forth for use in the event of an incomplete evidence card. Thus, contrary to defendant's assertion, the breath test results were not rendered invalid.

---

sequence and proceed until a completed evidence card is obtained or until the subject refuses;

"(b) If the operator receives an error message and print out from the instrument, such as 'Invalid Test' (not to include 'Invalid Test *Interferant Detected'), 'Residual Alcohol Present', 'Inhibited.RFI', 'Invalid Mode', 'Check Ambient Conditions', etc., the operator should take corrective action as outlined in the Intoxilyzer 5000 Student Manual, and restart the testing sequence. Nothing in this subsection precludes an operator from terminating the breath testing sequence as 'Refused' if the subject refuses, through a willful act, to follow the instructions of the operator. A printed test record card, as described in subsection (5)(d), is not required to document the operator's decision to terminate the breath test sequence as 'Refused'."

OAR 257-030-0070(6).

Because the requirements of OAR 257-030-0070 were satisfied, the trial court erred in suppressing the breath test evidence.

On appeal, reversed and remanded; on cross-appeal, affirmed.