Argued and submitted September 10, 2003, decision of the Court of Appeals reversed; judgment of the circuit court vacated, and case remanded to the circuit court for further proceedings February 26, 2004

STATE OF OREGON,
*Respondent on Review,*

*v.*

DAVID BRIAN CARTWRIGHT,
*Petitioner on Review.*

(CC 97CR1088; CA A101495; SC S48816)

85 P3d 305

Rebecca Duncan, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was David Groom, Public Defender.

Jennifer S. Lloyd, Assistant Solicitor General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

GILLETTE, J.

** Kistler, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

In this criminal proceeding, defendant contends that the trial court erred by quashing subpoenas and denying various motions that were aimed at obtaining certain prior statements of persons whose testimony the state planned to introduce against defendant at trial. The trial court quashed the subpoenas and denied the motions on the grounds that the statements, which were recorded on audiotapes, were in the possession and control of a third party and were protected from disclosure under the so-called "work-product doctrine." On defendant's appeal, the Court of Appeals upheld the trial judge's rulings. *State v. Cartwright*, 173 Or App 59, 20 P3d 223 (2001). We allowed defendant's petition for review and now hold that, regardless of who owned or controlled the audiotapes, defendant at least had a right to obtain them for use in cross-examining the individuals whose statements were on the tapes, after those individuals testified. We further hold that defendant's right to the audiotaped statements, at that point, was superior to any "work-product" protection that the third party who possessed the audiotapes asserted.

In 1997, while defendant was employed as the general manager of the Southern Curry Ambulance Association, Inc. (SCAA), a female employee complained to the SCAA board that defendant had sexually harassed her. The board investigated the matter and, in the course of that investigation, found that other female employees had similar complaints. The board decided to obtain and record statements from each of the complaining employees about the alleged incidents of harassment. After recording the statements of some of the complaining employees, the board contacted an attorney, who advised the board to continue with the recordings. Thereafter, the board completed the recording project. Defendant subsequently was fired.

The state later charged defendant with criminal harassment, ORS 166.065, and other crimes, based on complaints by the same SCAA employees. Before trial, defendant served SCAA's new general manager, Taurone, with a subpoena *duces tecum*. That subpoena (hereafter the "second

subpoena") required Taurone to bring the audiotaped interviews to court on a designated date before trial.[1] Defendant also filed a motion to compel production of the same material, citing ORS 136.580, set out below, as statutory authority for that motion. Defendant also relied on Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution as authorities supporting his right to the subpoenaed materials.

SCAA moved to quash the second subpoena and opposed the motion, arguing that the tapes were protected "work product" and that "no legal authority exists for a defendant to obtain discovery from a non-party in a criminal case." In an attached affidavit, Taurone averred that SCAA had made the tapes in anticipation of litigation and had not provided them to the prosecution in defendant's case. The trial court granted SCAA's motion to quash, concluding that the court had no authority to allow pretrial discovery of material that was not in the state's control.

Defendant then served Taurone with a third subpoena *duces tecum*, directing him to appear *at trial* with the audiotapes. SCAA again moved to quash the subpoena. Defendant (apparently) also filed another motion to compel. In oral argument on the matter, defendant cited *State v. Foster*, 242 Or 101, 407 P2d 901 (1965), as authority for the rule that, in a criminal proceeding, prior statements by a state's witness that relate to the subject matter of the witness's direct testimony must be made available to the defendant at trial to inspect and use in cross-examining the witness. The day before trial, the trial court quashed the third subpoena and denied defendant's motion to compel. In a written order, the court indicated that it found nothing in *Foster*, or elsewhere in its examination of the relevant law, that would authorize a criminal defendant to compel production of material in the possession of a third party.

Defendant raised the issue yet again in his cross-examination of the complaining witnesses. Defense counsel

---

[1] We say "second," because defendant previously had served SCAA with a similar subpoena *duces tecum*, which the trial court quashed for reasons that are unrelated to the present controversy. Defendant does not assign error to the trial court's decision with respect to that first subpoena *duces tecum*.

asked each of the witnesses whether they previously had made any statement to the SCAA board about the matters to which they had testified and whether such a statement had been taped. After each witness replied in the affirmative, counsel asked the court to direct SCAA to produce the tapes so that defendant could use them in his cross-examination. The trial court denied each of the requests, stating that it would not change its previous decision. Defendant was convicted on all charges.

On appeal, defendant argued that the trial court erred in quashing his second and third subpoenas *duces tecum* and otherwise in refusing to order Taurone or SCAA to produce the audiotapes, either before or during his trial. The Court of Appeals rejected that claim, holding that defendant had established neither a statutory right to pretrial access to the tapes under ORS 136.580 nor a constitutional right to such access under the state or federal compulsory process clauses. *Cartwright*, 173 Or App at 66-77.

Before this court, defendant continues to assert his right to compelled production of the audiotapes. Defendant contends that that right derives from three sources: (1) the subpoena statutes found at ORS 136.567 and ORS 136.580; (2) the compulsory process provisions of the Oregon and United States constitutions; and (3) the Confrontation Clauses of Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. We are persuaded that the answer to the present controversy lies, primarily, in the subpoena statutes and in cases that pertain to a party's right to cross-examine the opposing party's witnesses. We therefore confine our discussion to those topics.

We begin our analysis by addressing defendant's second subpoena *duces tecum.* In doing so, we acknowledge that our discussion in this respect is not a holding because (as we shall explain *post*) the decisive rulings in this case turn out to be those that the trial court made respecting the third subpoena. However, the second subpoena played a prominent role in the analysis of the Court of Appeals, and we believe that a discussion of our present understanding of the

statutory scheme relating to such subpoenas will be of value to bench and bar in dealing with similar issues in the future.

Defendant's second subpoena *duces tecum*, commanded Taurone to bring the audiotapes to court some two weeks before the trial was set to begin, on a date (February 17, 1998) when, as far as we are able to tell, no trial-related court proceedings were scheduled. Defendant cited, and continues to cite, ORS 136.580 as authority for that demand. As we shall explain, however, it does not appear that ORS 136.580 authorizes a subpoena *duces tecum* commanding pretrial production of evidentiary material such as the audiotapes at issue here.

ORS 136.580 is one of several general subpoena provisions found in the Oregon criminal procedure statutes. One of those provisions, ORS 136.567, authorizes criminal defendants to issue subpoenas that command the attendance of witnesses before a court.[2] Another provision, ORS 136.575, sets out the various permissible forms of subpoenas. ORS 136.575(4) and (5) entitle a defendant to issuance of subpoenas that command the recipients to appear in a designated court at a designated time *"as a witness in a criminal action."*[3] (Emphasis added.)

---

[2] ORS 136.567 provides, in part:

"(1) A defendant in a criminal action is entitled, at the expense of the state or city, to have subpoenas issued for not to exceed 10 witnesses within the state. A defendant is entitled, at the expense of the defendant, to have subpoenas issued for any number of additional witnesses without an order of the court. * * *

"(2) Any subpoena that a defendant in a criminal action is entitled to have issued shall be issued:

"(a) Upon application of the defendant, by the clerk of the court in which the criminal action is pending for trial, and in blank, under the seal of the court and subscribed by the clerk; or

"(b) By an attorney of record of the defendant, and subscribed by the attorney."

[3] ORS 136.567(2) entitles defendants to issuance of subpoenas either by the clerk of the court or by the defendant's attorney of record. The subpoena forms applicable to clerks of the court, ORS 136.575(4) and (5), and to a defendant's attorney of record, at ORS 136.575(6), command the recipient's attendance in court "as a witness in a criminal action." In contrast, district attorneys may issue subpoenas commanding the recipient's attendance "before the grand jury or in a criminal action," ORS 136.575(2), and magistrates may issue subpoenas commanding the recipient's attendance "on the examination of a criminal charge," ORS 136.575(1).

■■ Although those subsections of ORS 136.575 speak primarily to the proper form for subpoenas, they provide a certain amount of information about the objects and permissible uses of the subpoena device. As noted, a defendant's subpoenas must state that the recipient is to appear as a "witness." A "witness" is a person "who is called to testify before a court," "who testifies to what he has seen, heard, or otherwise observed," or "whose declaration under oath * * * is received *as evidence* for any purpose, whether such declaration be made on oral examination or by deposition or affidavit. *Black's Law Dictionary* 1602 (6th ed 1990) (emphasis added). By specifying that a subpoena should require the recipient to appear in court "as a witness in a criminal action," the statute proclaims the proper use of a subpoena, *i.e.*, to secure the availability of testimony or other evidence at a court proceeding at which such evidence will be heard or otherwise considered.

With the foregoing background in mind, we turn to the statute on which defendant principally relies—ORS 136.580. ORS 136.580 provides:

"(1) If books, papers or documents[4] are required, direction to the following effect shall be added to the [subpoena] form * * *: 'And you are required, also, to bring with you the following: (describing intelligibly the books, papers or documents required).'

"(2) Upon the motion of the state or the defendant, the court may direct that the books, papers or documents described in [a] subpoena be produced before the court prior to the trial or prior to the time when the books, papers or documents are to be offered in evidence and may, upon production, permit the books, papers or documents to be inspected and copied by the state or the defendant and the state's or the defendant's attorneys."

---

4 Although audiotapes are not precisely "books, papers or documents," no party questions the proposition that audiotapes are or may be so analogous to those subjects that it would be illogical to refuse to apply the statute's terms to audiotapes. We agree with that common premise. The audiotapes at issue here are the functional equivalent of written statements. It would be a towering triumph of form over substance to hold that SCAA's choice of an electronic, rather than a documentary, mode of preserving the witness' statements puts the statements beyond the reach of a subpoena *duces tecum.*

ORS 136.580(1) thus provides for a subpoena *duces tecum* by permitting parties to a criminal proceeding to add an additional term to the general subpoena forms set out at ORS 136.575, *viz.*, a requirement that the recipient bring specified documentary materials with him or her at the appointed time. As noted, those forms require the recipient to appear in court "as a witness in a criminal action," that is, to appear at some court proceeding held in connection with the criminal action at which the subpoenaed party may be expected to provide testimony or other evidence. ORS 136.580(1) thus appears to grant to criminal defendants only a right to issue subpoenas *duces tecum* that command recipients to bring material with them *to the defendant's trial or to a trial-related court proceeding at which the material may be called for as evidence.*

The second section of ORS 136.580 then provides a specific mechanism for obtaining access to the subpoenaed material *before* the court proceeding at which the material will or may be admitted as evidence. Notably, the statute does not authorize a criminal defendant to employ the subpoena powers described elsewhere in the statutes to command early production of documentary material *directly*. Instead, it indicates that the appropriate mechanism for obtaining early access to subpoenaed materials is a motion asking *the court* to direct the production of books, papers, or documents "prior to the trial or prior to the time that the books, papers or documents described in the subpoena are to be offered in evidence."[5]

There are two important points to be drawn from the words of ORS 136.580(2). First, subsection (2) presupposes the existence of a subpoena *duces tecum* issued in accordance with ORS 136.567 and ORS 136.580(1), *i.e.*, one that properly summons documentary materials to trial or to some other court proceeding where they "are to be offered in evidence." The provision thus allows parties to ask for *early* production of material that, in the ordinary course and as a matter of right, will be available for evidentiary use at the proceeding to which they already have been subpoenaed. Second, the

---

[5] We understand the alternative phrasing to allow for the possibility that materials may be relevant to issues raised in, *e.g.*, an omnibus hearing before trial.

trial court's decision to deny or accede to a request for such early production under ORS 136.580(2) is within the court's discretion: The statute states that "the court *may* direct that the books, papers or documents described in the subpoena" be produced early. (Emphasis added.)

■ With the foregoing points in mind, we return to defendant's second subpoena. Clearly, defendant did not summon the audiotapes to a court proceeding so that they would be available *as evidence*. Indeed, the subpoena commanded production of the audiotaped statements on a date when no evidence would be taken, because no proceeding relating to the criminal action was scheduled. Instead, defendant was attempting to use the subpoena as a discovery device to command the early production of the audiotapes, either to the court or to himself. However, as we have explained, the statute on which he relies does not appear to grant him such authority and, absent such authority, the trial court acted properly in quashing the subpoena.

■ Based on our present reading of the statute, defendant's second "Motion to Compel"[6] suffers from a related infirmity. The motion cites ORS 136.580, generally, as authority, but it is clear that, in filing the motion, defendant was focusing on the early production procedure provided in the second subsection of that statute. However, as we have noted above, ORS 136.580(2) presupposes the existence of a proper subpoena *duces tecum* summoning documentary materials to a proceeding at which the materials will or may be called into evidence. Such a subpoena did not exist. The subpoena *duces tecum* that defendant had issued at that point was a nullity: It summoned the audiotapes to court, but not to a proceeding at which they would or might be used as

---

[6] The defendant's decision to label his motion in support of the subpoena as a "Motion to Compel Production of Taped Statements of Complaining Witnesses" created some uncertainty, given the high likelihood of confusing the motion with a motion to compel discovery under ORS 135.805 to 135.873. The latter kind of motion seeks pretrial access to certain material in the possession of the opposing party and does not appear to be relevant to defendant's efforts in the present case to gain early access to materials subpoenaed from a third party. We would denominate a motion under ORS 136.580(2), which defendant clearly intended, as a "Motion for Early Production."

evidence. Ultimately, defendant failed to meet the preconditions for a motion under ORS 136.580(2). The trial court, therefore, did not err in denying the motion.

We turn, then, to defendant's third subpoena *duces tecum* and the accompanying (third) motion to compel. SCAA again moved to quash that subpoena and opposed defendant's motion, arguing, as it had a few weeks before, that the material was subject to protection as work-product and that defendant was not entitled to discovery from a third party. The trial court heard and decided the two motions on March 3, 1998, the day before trial.

■ Unlike defendant's second subpoena *duces tecum*, which purported to demand *early* production of the audiotapes, the third subpoena *duces tecum* demanded that the audiotapes be brought *to defendant's trial*. It was, in other words, an ordinary subpoena *duces tecum*, issued in accordance with ORS 136.567 and ORS 136.580(1). As such, the standards that apply to motions for early production under ORS 136.580(2) were not relevant to the issue whether the court should quash the third subpoena. Instead, the relevant standards were those that would apply to a motion to quash any ordinary subpoena *duces tecum* commanding that documentary materials be brought to trial.

■ There is no statutory provision that expressly provides for a motion to quash a subpoena. However, courts regularly receive and rule on motions to quash, and, whatever the scope of a court's authority in such circumstances, such authority cannot permit trial courts to violate a criminal defendant's broad right under the subpoena statutes to compel witnesses to attend his or her trial (and to bring along any "books, papers or documents" that the defendant has identified in the subpoena).

■ SCAA sought to quash defendant's third subpoena *duces tecum* on two grounds: (1) defendant was attempting to obtain discovery from SCAA, despite the absence of any legal authority for discovering material in the hands of a nonparty; and (2) the audiotaped statements were protected work-product material. SCAA's first objection was not a proper ground for quashing the subpoena at that time. A subpoena

commanding a witness to appear as a witness in a court proceeding and to bring with the witness specified materials is not and cannot amount to an attempt to obtain discovery. Such a subpoena does not require production of the material to the party issuing the subpoena; it merely commands that the witness bring the material to the courtroom so that it is available if and when a party needs it.[7]

Neither was SCAA's claim of privilege a proper basis for quashing the subpoena in this case. In that regard, we note that, from the beginning, defendant had asserted a right to use the audiotapes in cross-examining any individual who had given an audiotaped statement and who would appear in the criminal action as a witness against him. In support of his third subpoena and motion to compel, defendant relied, *inter alia*, on *Foster*, 242 Or 101, as authority for that right. Defendant also argued that his right to examine and use any such prior statement in cross-examining a witness overshadowed any claim that the prior statement was protected under the work-product doctrine.

Defendant is correct. In *Foster*, this court considered whether a trial court erred in denying a criminal defendant access to the pretrial statement of a state's witness for use in cross-examining that witness. The court noted that there was a distinction between a motion seeking pretrial examination of prior statements of a witness and a motion seeking examination of such statements at trial for purposes of cross-examination. 242 Or at 105. The *Foster* court held that it was error to deny the latter type of motion, but not the former. *Id.*

The relevance of *Foster* to the present controversy is, in our view, obvious. While the case was decided before the advent of reciprocal discovery rules (the document at issue actually was in the possession of the prosecution), the logical force of its ruling applies equally to documents properly subpoenaed that are in the possession of third parties. At the very least, defendant in the present case had the right to examine and use in cross-examination the audiotapes of any

---

[7] Neither does the fact that defendant simultaneously moved to compel production alter the fundamental nature of the subpoena, which is to secure the availability of evidence.

individual who, in fact, appeared at trial as a witness against him.[8]

It may be argued that the foregoing analysis is speculative because none of the taped individuals had testified at the time that the court heard the motion to quash. However, that fact does not undermine the relevance of the aforementioned right to subpoena the materials so that they could be available at trial. A court considering a motion to quash on the grounds asserted here must look at the *potential* uses of the subpoenaed material at trial, and, unless it is clear that the material or testimony has no potential use at trial, the court must deny the motion to quash.

In the present case, SCAA did not dispute defendant's contention that the audiotapes contained the prior statements of probable witnesses about the very incidents that they would be addressing in their testimony. As defendant repeatedly told the trial court, such statements likely would contain material that would be relevant and admissible to impeach those witnesses (should they appear) upon cross-examination. The witnesses were likely to testify, and, once they did, the work-product doctrine would not protect their statements. Defendant thus demonstrated that there was a likely evidentiary use for the subpoenaed audiotapes at trial. Under those circumstances, it is clear that the trial court violated defendant's statutory right under ORS 136.567 and ORS 136.580(1) when it quashed the third subpoena. In short, the decision to quash was error.

Had the trial court denied the motion to quash, as it should have, defendant's difficulties may have been at an end. Certainly, it seems likely that, in the interests of efficiency, the trial court would have granted defendant's request to examine the audiotapes *before* the complaining witnesses had testified and defendant's right to such an

---

[8] SCAA's claim of "work product" does not alter our conclusion. Assuming, without deciding, that the audiotapes *were* "work product"—a proposition that the parties do not explore, but with respect to which we have substantial questions— any privilege disappeared when the witnesses took the stand. *See Pacific N.W. Bell v. Century Home*, 261 Or 333, 340-41, 491 P2d 1023, *withdrawn in part on other grounds*, 261 Or 351, 494 P2d 884 (1972) (so holding under analogous circumstances).

examination became absolute. But, even if the trial court had some choice as to whether to make the audiotapes available to defendant on the morning of trial, as the third motion to compel apparently requested,[9] it had no choice in the matter *after* those witnesses testified. As we already have discussed, 336 Or at 418-19, *Foster* makes it clear that, when a litigant requests that a witness's prior statement be made available for use in his or her cross-examination, the court must honor that request. It follows that, at the very least, the trial court erred in denying defendant's various requests, made after each of the complaining witnesses testified, to examine the audiotapes for use in cross-examining those witnesses.

■ The state argues that, even if the trial court did err, there was little likelihood that the error affected the verdict, given that the state presented independent eyewitness testimony that pertained to at least some of defendant's conduct. We disagree. The testimony of the witnesses whose prior statements defendant sought was vital to the state's case: The *only* testimony that spoke to at least some of the charges came from those witnesses. Depending on the content of the prior statements, cross-examining those witnesses on their prior statements could have been a very effective method of undermining the state's case. Under those circumstances, we cannot conclude that the trial court's decision had little likelihood of affecting the verdict. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (stating that standard).

The state also argues that, even if we conclude that the trial court's erroneous decisions might have affected the verdict, the appropriate remedy may not be the one that defendant seeks, *viz.*, a new trial. It argues that there

---

[9] There is no copy of the third motion to compel in the record, and its contents are not entirely clear. Defendant suggests that the motion sought an order requiring SCAA to produce the audiotapes for defense counsel's inspection on the morning of the trial. Although we see no reason to deny such a motion, once defendant had established that the taped individuals likely would testify and that their testimony would pertain to the same incidents, we are not prepared to say that refusing that motion was error. As discussed earlier, 336 Or at 415-16, ORS 136.580(2) clearly makes the decision to order *early* production of subpoenaed material (that is, production "prior to the time when the books, papers or documents are to be offered into evidence") a matter for the trial court's discretion. On the record that is before us, and without any argument from defendant as to the limits of that discretion, we cannot find that denying the motion was an abuse of discretion.

remains a possibility that the audiotapes contain no usable impeachment material and, thus, also a possibility that the trial court's error was harmless. The state suggests that, instead of ordering a new trial, we remand the case to the trial court with instructions to review the audiotapes and to determine whether the recorded statements of the witnesses would have provided impeachment material that likely would have affected the result of the trial. If, after that exercise, the trial court concludes that its error was harmless, it can make findings to that effect and reinstate or reaffirm the original judgment of conviction.

We agree with the state that a new trial may not be necessary, but we do not agree with the particulars of the state's proposed remedy. It is not the trial court's place to speculate about the possible arguments that defendant might find in the witnesses' prior statements. Defendant has established his right to examine the audiotapes, and he must be given them. On remand, the trial court shall order SCAA to make the audiotapes available to defendant and his attorney. After reviewing the audiotapes, if defendant finds that there is material in the tapes that would serve as a basis for impeaching or otherwise discrediting the witnesses that appeared against him at trial, he may make that argument to the trial court. If, after hearing that argument, the trial court concludes that defendant's inability to use the materials could not have affected the verdict, then the court may make findings to support its conclusion and reinstate the original judgment of conviction. Unless the trial court can so conclude, however, it must order a new trial.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings.