Argued and submitted October 10, 2011, affirmed May 31, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONALD ALLEN WEST,
*Defendant-Appellant.*

Multnomah County Circuit Court
081153828; A142519

279 P3d 354

Rankin Johnson IV argued the cause and filed the brief for appellant.

Joanna Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

### SCHUMAN, P. J.

Defendant appeals his conviction for driving under the influence of intoxicants (DUII), ORS 813.010, raising several challenges to rulings related to the Intoxilyzer 8000 breath testing device and to the admission of breath test results. We conclude that there was no error and affirm.

We first summarize the pertinent statutes, administrative rules, and case law. Under ORS 813.300, the amount of alcohol in a person's blood at the time the person is alleged to have been driving a motor vehicle while under the influence of intoxicants, as shown by chemical analysis of the person's breath or blood, is indirect evidence that may be used at trial, along with other evidence, to determine whether the person was in fact under the influence of intoxicants.

ORS 813.160(1)(b) describes a "valid" chemical analysis of a person's breath as one that "is performed according to methods approved by the Department of State Police." The statute further sets forth the responsibilities of the Department of State Police in connection with approval of the chemical breath analysis and the testing and certification of equipment used for that purpose:

"For purposes of this paragraph, the Department of State Police shall do all of the following:

"(A) Approve methods of performing chemical analyses of a person's breath.

"(B) Prepare manuals and conduct courses throughout the state for the training of police officers in chemical analyses of a person's breath, which courses shall include, but are not limited to, approved methods of chemical analyses, use of approved equipment and interpretation of test results together with a written examination on these subjects.

"(C) Test and certify the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of the equipment and periodically thereafter at intervals of not more than 90 days. Tests and certification required by this subparagraph must be conducted by trained technicians. Certification under this subparagraph does not require a signed document."

We have held that compliance with the requirements of ORS 813.160(1) is the equivalent of a foundation for admissibility of a chemical breath test and that the evidence is admissible in a criminal prosecution if the test was conducted pursuant to ORS 813.160(1). *See State v. Warner*, 181 Or App 622, 634, 47 P3d 497, *rev den*, 335 Or 42 (2002) (using ORS 813.160(1) "to be valid" language as an example of a foundational requirement); *State v. Chipman*, 176 Or App 284, 294, 31 P3d 478 (2001); *State v. Balderson*, 138 Or App 531, 535 n 1, 910 P2d 1138 (1996); *see also State v. O'Key*, 321 Or 285, 293, 899 P2d 663 (1995) (in the case of legislative recognition, there is no need for the court to determine scientific reliability).

The Department of State Police has implemented its authority under ORS 813.160 through administrative rules. OAR 257-030-0110 sets forth the criteria for approval of breath testing equipment:

"Any instrument or equipment to be used for the testing of a person's breath to determine the alcohol content of the blood may be approved by the Oregon State Police if one or more of the following criteria are met:

"(1) Submission by the manufacturer or distributor of the instrument of at least two reports of studies correlating blood analysis and breath tests performed with this instrument, conducted by two separate laboratories of governmental health or law enforcement agencies, or independent organizations, financially unrelated to the manufacturer or distributor of such instruments.

"(2) Provision of a production model of the instrument by the manufacturer or distributor to the Oregon State Police for a sufficient period of time to allow Oregon State Police technician(s) to conduct sufficient investigation and laboratory tests to adequately ascertain accuracy and reproducibility of the breath testing equipment.

"(3) Those instruments which have been found by the National Highway Traffic Safety Administration to conform to the model specifications for evidential breath testing devices, and which are listed on the Conforming Products List in the Federal Register.

"(4) Subsequent series of above instruments, so long as the subsequent changes and series do not diminish the

instrument's ability to accurately determine blood alcohol content.

"[*Publications: Publications referenced are available from the agency.*]"

(Brackets in original; emphasis added.) OAR 257-030-0120 specifically approves the Intoxilyzer 8000:

"The following breath testing equipment is approved under OAR 257-030-0110 for performing chemical analysis of a person's breath: The Intoxilyzer 8000:

"*Correlation studies performed with the Intoxilyzer 8000 by Oregon State Police technician(s) are incorporated as Appendix 2: Studies Performed with the Intoxilyzer TM 8000.*"

(Brackets in original; emphasis added.)

Pretrial discovery in a criminal proceeding is governed by ORS 135.805 to 135.873. ORS 135.815(2) provides:

"Except as otherwise provided in ORS 135.855 and 135.873, in prosecutions for violation of ORS 813.010 in which an instrument was used to test a person's breath, blood or urine to determine the alcoholic content of the person's blood the district attorney shall disclose to a represented defendant at least the following material and information within the possession or control of the district attorney:

"(a)  Any report prepared by a police officer relating to field tests, interviews, observations and other information relating to the charged offense;

"(b)  Any report relating to the test results;

"(c)  A copy of the form provided to the defendant under ORS 813.100(3)(b); and

"(d)  Any checklist prepared by the operator of the instrument for the test."

ORS 813.855 provides, in part:

"(1)  The following material and information shall not be subject to discovery under ORS 135.805 to 135.873:

"* * * * *

"(d) Schematics, source codes or software of an instrument that was used to test a person's breath, blood or urine to determine the alcoholic content of the person's blood that are not in the actual possession or control of the state."

Against that legal backdrop, we consider the facts of this case, which are largely procedural: Officers took defendant into custody on suspicion of DUII. and other offenses, and he submitted to a breath test on an Intoxilyzer 8000. The test indicated that defendant had a blood alcohol concentration of .11 percent. Defendant was charged with DUII.

Through discovery and a request for subpoena *duces tecum*, defense counsel sought to obtain information concerning the Intoxilyzer 8000. He asked for source codes, schematic diagrams, sales contracts, and Oregon State Police studies relating to the Intoxilyzer 8000. Defendant's requests included "[a]ll reports, tests, test results, and memorandum of any kind used by the legislature, the Oregon State Police, or any other governmental agency in the State of Oregon to determine the reliability, validity, or function of the Intoxilyzer 8000 breath test machine."

The state objected, contending that the requests were too broad and were outside of the scope of discovery required by ORS 135.815, and, further, that source codes are expressly excluded from discovery by ORS 135.855. The state pointed out that the materials required to be disclosed under ORS 135.815 had been disclosed. Defendant contended that the materials were necessary to test the state's case, and asserted that the disclosure implicated defendant's constitutional rights to confront and cross-examine witnesses, to due process, to a jury trial, and to effective assistance of counsel.

When asked by the trial court whether he had attempted to obtain the information through publicly accessible sources, defendant's counsel stated that he had spent approximately 30 minutes on the telephone trying to obtain the information from the Department of State Police without success and admitted that 30 minutes did not "count" for very much. The trial court declined to order the discovery and denied the pretrial request for a subpoena.[1] After trial to a

---

[1] The trial court explained its frustration with the scope and speculative value of the request:

jury, which included testimony from the arresting officer as well as the certified results of the Intoxilyzer 8000 test, defendant was convicted of DUII.

On appeal, defendant challenges the trial court's rulings in seven assignments of error. Defendant's first through fourth assignments challenge the trial court's rulings with respect to discovery and the requested subpoena. In his fifth assignment of error, defendant contends that the trial court erred in denying his request for indigent defense funds to hire an expert to testify concerning the Intoxilyzer 8000. In his sixth assignment, defendant contends that the trial court erred in denying his motion *in limine* to exclude the results of the Intoxilyzer test. In his seventh assignment, defendant contends that the court erred in refusing to give a requested jury instruction.

We address first defendant's contentions, raised in his first through fourth assignments, that the trial court erred in denying him discovery concerning the Intoxilyzer

---

"What you have asked for is so very sweeping that you are essentially asking, without limit, for anything * * * which any branch of government may or may not conceivably have, that has any relationship to an instrument that's used throughout the State, and compliance with what you have asked for would be so remarkably burdensome and its usefulness in *toto* is speculative that I suggest that the very scope of it, without some effort to recognize the limits of relevance, possible relevance to this case or the proportionality of the effort versus the likelihood of each of these items that you have indicated of yielding anything is something which cuts quite heavily against your request.

"* * * [Y]our request extends into legislative documents[.] I can't conceive of a circumstance in which the jury is required or allowed to reconsider legislative decisions[.] * * * [Y]ou have cited no authority that requires the prosecution to go to the legislative history to find things for you which, if they are available to the prosecution, are of course available to you because that's another branch of government in which you can certainly inquire. They are nothing that's used for the prosecution.

"But I have asked you again and again to cite to me some authority I have to make these determinations, and again and again you have responded that you think that they might be useful to you and you have a right to cross-examine. Well, of course you do, and that just is not the issue. The issue is how far the State goes in preparing you for trial, and you have pointed to constitutional cases which relate to something far different, that relate to exculpatory statements or exculpatory information or clearly relevant, admissible impeachment about specific witnesses planned to be called at trial, where that material was in the hands of the prosecution or its agents, as the police, that are working on the particular case. None of those seem to have any relevance here."

and in declining to order a pretrial inspection pursuant to ORS 136.580(2) of evidence concerning the Intoxilyzer.[2] We review the trial court's rulings for errors of law, *State v. Divito*, 330 Or 319, 5 P3d 1103 (2000) (whether a party is entitled to discovery is a question of law), and for an abuse of discretion, *State v. Cartwright*, 336 Or 408, 416, 85 P3d 305 (2004) (ruling declining to order a pretrial subpoena reviewed for abuse of discretion).

Defendant concedes that he obtained discovery pursuant to ORS 135.815 and that the materials that he seeks fall outside the scope of the discovery statutes. He asserts instead that, discovery rules aside, he was entitled to the materials by way of discovery or subpoena under the compulsory process clauses of the Oregon Constitution, Article I, section 11, and the Sixth Amendment to the United States Constitution.[3]

The right to compulsory process under Article I, section 11, of the Oregon Constitution parallels federal Sixth Amendment jurisprudence, *State v. Mai*, 294 Or 269, 272, 656 P2d 315 (1982); *State v. Beeler*, 166 Or App 275, 283, 999 P2d 497, *rev den*, 331 Or 244 (2000), and the analysis of the two is the same. *State v. Zinsli*, 156 Or App 245, 251-52, 966 P2d 1200, *rev den*, 328 Or 194 (1998). Accordingly, we consider both state and federal authorities in our discussion.

The right to compulsory process encompasses both a right to discovery and a right to compel the production of evidence. A criminal defendant's constitutional entitlement to discovery is limited to information that is both (1) in the possession of the prosecution and (2) material and favorable to a defendant's guilt or punishment. *See generally Brady v.*

---

[2] The record does not show that defendant ever issued a subpoena under ORS 136.580(1); thus, the precise question raised in defendant's fourth assignment—that the trial court erred in quashing a subpoena—is rejected without discussion.

[3] Article I, section 11, of the Oregon Constitution provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor[.]"

*Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963). Similarly, the right to compel production of materials through subpoena extends only to testimony or documents that are "material and favorable," *State v. Pelham*, 136 Or App 336, 344-45, 901 P2d 972 (1995), *rev den*, 323 Or 264 (1996), or otherwise "demonstrably relevant" and with established "bearing" on the criminal case, *State v. Cartwright*, 173 Or App 59, 66 n 9, 20 P3d 223 (2001), *rev'd on other grounds*, 336 Or 408, 85 P3d 305 (2004). Evidence is material if it has a "reasonable probability" of affecting the outcome of the proceeding. *United States v. Bagley*, 473 US 667, 682, 105 S Ct 3375, 87 L Ed 2d 481 (1985).

Defendant is correct that, under *Brady*, the government has a constitutional duty to review its files and disclose any information that is in the possession of the government that is both material and favorable. However, once the state has fulfilled its affirmative duty to disclose material and favorable information in its possession, the defendant must make some further showing of favorability and materiality before additional requested material in the government's possession must be disclosed. *State v. Koennecke*, 274 Or 169, 179, 545 P2d 127 (1976).

Defendant concedes that he was not asserting that the material sought would be exculpatory. He did not know what the materials would show; he simply sought them for the general purpose of determining whether they were favorable, contending that the materials were necessary to test the reliability of the Intoxilyzer, and "could be used to show the manufacturer's bias toward producing evidence that will lead to convictions." Contrary to defendant's contention, however, *Brady* is not authority for a defendant obtaining evidence of unknown import to test whether it helps or hurts his case. *Koennecke*, 274 Or at 183. We conclude that defendant has not made a sufficient showing of materiality and favorability and that, therefore, he was not entitled to the materials under Article I, section 11, of the Oregon Constitution or under the Sixth Amendment, either through discovery or subpoena. Thus, the trial court did not err in denying defendant's request for discovery and did not abuse its discretion in rejecting defendant's pretrial request for those documents by subpoena *duces tecum*.

Under ORS 135.055, an indigent defendant is entitled to funding for an expert witness if he can show that the expense is reasonable and necessary to his defense.[4] Defendant sought funding to pay an expert to prepare an affidavit stating that the source codes and schematics for the Intoxilyzer 8000 show that it is unreliable. The trial court denied defendant's request. In his fifth assignment of error, defendant contends that under both ORS 135.055 and the due process protections of the state and federal constitutions, that he had a right to the funds in order to test the state's case: "[O]n the facts of this case, defendant was entitled to funding as part of testing the state's case. The state brought no evidence into the courtroom about the trustworthiness of the Intoxilyzer device, and so defendant was entitled to a reasonable opportunity to do so himself." He asserts that, if the trial court had allowed funds for the hiring of an expert witness under ORS 135.055, he could have shown that the source codes and schematics for the Intoxilyzer were exculpatory.

The appellate court reviews a trial court's determination under ORS 135.055(3) for an abuse of discretion, subject to the indigent defendant's constitutional right under the Fourteenth Amendment to the basic tools necessary for the preparation of an adequate defense. *State v. Rogers*, 313 Or 356, 366, 836 P2d 1308 (1992), *cert den*, 507 US 974 (1993). Thus, a defendant is entitled to the funds "[w]here a defendant establishes the probable value of the assistance sought such that there is a significant risk of error in the proceedings if that assistance is denied." *Id.* We have reviewed the record in this case and conclude that the trial court did not abuse its discretion in determining that defendant had failed to make the required showing. As with respect to the first four assignments of error, the fatal flaw in defendant's argument is his failure to demonstrate the possibility that the expert could testify to anything useful to his case. He relies instead on the assertion that, *if* various governmental agencies produced everything defendant requested (including items of which state law prohibits disclosure and about which prohibition

---

[4] ORS 135.055(3) provides that a person who is eligible for appointed counsel is entitled to "necessary and reasonable fees and expenses for investigation, preparation and presentation of the case for trial."

defendant makes no argument beyond naming a constitutional right), *then* an expert *might* be able to demonstrate that the documents reveal something useful. Denying a request for indigent funding for help in such a fishing expedition was not an abuse of discretion. Defendant contends in his sixth assignment of error that the trial court erred in denying his motion *in limine* to exclude the breath test results. Defendant does not contend that the Intoxilyzer results in this case were admitted in violation of ORS 813.160 or OAR 257-030-0110. He asserts, rather, that the evidence should be excluded because the state did not lay a proper foundation for that scientific evidence, as required by OEC 702, *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *O'Key*. He acknowledges that, as the court suggested in *O'Key*, ORS 813.160 represents "a case of *prima facie* legislative recognition" for which no further foundation is required. 321 Or at 293. Further, as he also correctly acknowledges, the Supreme Court has held that Intoxilyzer tests are reliable, *Owens v. MVD*, 319 Or 259, 875 P2d 463 (1994), and that the accuracy of the test results may not be challenged if the person who administers the test is qualified to do so under ORS 813.160, and if the methods, procedures, and equipment used in the test comply with the requirements of ORS 813.160. When the proper procedures have been followed under ORS 813.160(1) and OAR 257-030-0040, the Intoxilyzer test results are admissible. *See State v. Roberts*, 241 Or App 589, 596, 251 P3d 232, *rev den,* 350 Or 574 (2011); *Balderson*, 138 Or App at 535 n 1.[5]

Defendant nonetheless contends that the statutory provisions authorizing the admission of Intoxilyzer test results cannot relieve the state of its burden under the state and federal constitutions to lay a proper foundation, which he contends should have included witness testimony explaining how the Intoxilyzer works, what it measures, and the rate of error. *See Daubert v. Merrell Dow Pharms*, 509 US 579, 113 S Ct 2786, 125 L Ed 2d 469 (1993); *O'Key*, 321 Or at 306 (discussing foundation for scientific evidence). The failure to lay that independent foundation, he asserts, violates his right to

---

[5] We decline to consider defendant's unpreserved contentions that ORS 813.160(1) constitutes an improper delegation of authority to the Department of State Police and a violation of the separation of powers.

due process and his right under the Sixth Amendment to cross-examine the evidence against him. We reject the argument. Defendant had an opportunity to cross-examine witnesses and to impeach the state's evidence, including the Intoxilyzer test results. *State v. Gardner*, 52 Or App 663, 668, 629 P2d 412, *rev den*, 291 Or 419 (1981). He did not attempt to establish that information concerning the functioning and reliability of the Intoxilyzer was not available to him. We conclude that the admission of the Intoxilyzer results did not violate defendant's right to due process or his Sixth Amendment right to impeach the evidence against him. *See State v. Bergin*, 231 Or App 36, 217 P3d 1087 (2009), *rev den*, 348 Or 280 (2010); *State v. Norman*, 203 Or App 1, 125 P3d 15 (2005), *rev den*, 340 Or 308 (2006) (admission of certificates of accuracy of Intoxilyzer machine without oral testimony of the technicians who prepared them did not violate defendant's Sixth Amendment right to confrontation, because the certificates were more akin to hearsay statements that were not considered testimonial in nature at common law, and there was no evidence in the record that the technicians were functioning as the proxy of the police investigation concerning defendant).

In his seventh assignment of error, defendant contends that the trial court erred in declining to give his requested jury instruction that,

> "[i]n order to *use* the Intoxilyzer result to determine whether [defendant] was intoxicated, you must first decide, using evidence presented to you during the trial, whether the Intoxilyzer machine is trustworthy and reliable."

(Emphasis added.) Defendant did not preserve at trial the constitutional contentions that he raises on appeal concerning this assignment of error, and we decline to address them. To the extent that he contends that the instruction should have been given because it is a correct statement of the law, he is incorrect. It is the court, not the jury, that determines the admissibility of evidence. The trial court therefore did not err in declining to give the requested instruction.

Affirmed.