Argued and submitted August 18, 2015, vacated and remanded June 8, respondent's petition for reconsideration filed July 19, allowed by opinion September 14, 2016

See 281 Or App 96, 380 P3d 1257 (2016)

## STATE OF OREGON,
### *Plaintiff-Respondent,*

*v.*

## GEORGE NICK LAMMI,
### *Defendant-Appellant.*

Columbia County Circuit Court
111119; A154933

375 P3d 547

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan Yorke, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Lagesen, Judge.*

---

* Hadlock, C. J., *vice* De Muniz, S. J.; Lagesen, J., *vice* Nakamoto, J. pro tempore.

**LAGESEN, J.**

A jury convicted defendant of 47 sex offenses against his daughter, E, and the trial court sentenced him to a sum of 600 months' incarceration. On appeal from the judgment of conviction and sentence, defendant raises three assignments of error. We reject two of those assignments of error without written discussion. As to the third, in which defendant challenges the trial court's refusal to conduct an *in camera* review of E's counseling records to determine whether those records contained evidence relevant to the charges against defendant, we conclude that the trial court erred by not conducting the requested *in camera* review. For that reason, we vacate and remand for the trial court to conduct the requested *in camera* review and, depending on the outcome of that review, to either reinstate the judgment or to determine whether defendant is entitled to a new trial under the framework established by the Supreme Court in *State v. Cartwright*, 336 Or 408, 85 P3d 305 (2004).

The charges against defendant arose after one of defendant's friends observed interactions between defendant and E, and was told things about their relationship, that caused the friend to be concerned that the relationship between defendant and E was sexual. After failed attempts to discuss those concerns with defendant, the friend met with E's school principal to discuss his concerns. After the meeting, the principal reported the suspected abuse to DHS, which led to a police investigation. During the course of that investigation, Officer Manning interviewed the friend, E, and defendant. Manning then arrested defendant.

After defendant's arrest, E went to the Amani Center, a child abuse assessment center, where a forensic interview was conducted. During that interview, E described touching that happened while E was asleep, or in a dream-like state. E also stated she did not "think" that sex had ever happened to her, but did describe her breast and vagina being touched. E also recounted a time that she had told a friend about her concerns that defendant would get into trouble if defendant had "actually [done] this stuff to [her]." After her interview at the Amani Center, E began receiving counseling at Columbia County Mental Health (CCMH).

During trial, defendant subpoenaed E's CCMH records. The state and E opposed the subpoena. The trial court ordered that the records be delivered to the court, but deferred deciding whether to conduct an *in camera* review of those records. E moved to quash the subpoena, arguing that the records were privileged and that defendant had not identified an exception that would permit disclosure of the records. Citing relevant cases on the point, E noted further that, to be entitled to an *in camera* review of the records, defendant would have to show that the inspection might yield relevant evidence to which an exception to the privilege would apply.

Following E's submission of her motion, the court heard additional arguments regarding whether to conduct an *in camera* review of the records. Pointing to *State v. Reed*, 173 Or App 185, 197, 21 P3d 137, *rev den*, 332 Or 559 (2001), E, joined by the state, argued that defendant had not made the required threshold showing "that the inspection * * * might yield evidence [that] an [exception] to the nondisclosure rule applies." In response, defendant argued that he was entitled to such an inspection because E's equivocal statements during the Amani Center interview about whether the abuse, in fact, had occurred made it reasonable to think that E might have made similar equivocal statements about the abuse during her CCMH counseling sessions:

> "I do want to at least tell the court that as the court saw when the Amani Center person, Miss Kauffman, interviewed [E], that [E] said sometimes, 'If he did it.' That, I believe is something—gives us an indication that there is doubt in her mind that may well be reflected in her statements to her therapist, and so I would like to know whether or not in fact her doubts have been expressed again in a clinical setting."

The trial court declined to conduct an *in camera* review of the records, concluding that defendant had not made a showing that the records might contain exculpatory evidence subject to disclosure notwithstanding the psychotherapist-patient privilege.

On appeal, defendant argues that the trial court erred by not conducting an *in camera* review of E's CCMH

records. Pointing to *Reed*, and *State v. Hansen*, 304 Or 169, 743 P2d 157 (1987), defendant argues that the trial court was required to conduct an *in camera* review of the CCMH records for exculpatory evidence. Defendant contends that, under ORS 419B.040(1),[1] as interpreted in *Reed*, the trial court was required to conduct a review of the records if he demonstrated that those records "'might yield' exculpatory evidence regarding a child's abuse." That statute provides that, in a case of child abuse, the psychotherapist-patient privilege does not operate to exclude evidence about the abuse.

As the Supreme Court explained in *Hansen*, that statute authorizes the disclosure of both exculpatory and inculpatory evidence of child abuse, notwithstanding the fact that the evidence otherwise would be covered by the psychotherapist-patient privilege. 304 Or at 179. Defendant asserts that he adequately demonstrated that the CCMH files "might yield" exculpatory evidence regarding E's abuse, by showing that E started counseling after the Amani Center interview and after defendant's arrest (making it reasonable to think both that E talked about the abuse in counseling, and that her records might reflect those statements), and by showing that E made equivocal statements about whether the abuse occurred during the Amani Center interview (making it reasonable to think that E's counseling records might contain similar, exculpatory statements calling into question whether the abuse transpired).

The state, in response, argues that defendant failed to preserve his argument that ORS 419B.040(1) would authorize the disclosure of evidence contained in E's CCMH counseling records, notwithstanding the fact that those records are otherwise protected by the psychotherapist-patient privilege. Alternatively, the state argues that the trial court correctly concluded that defendant had failed to

---

[1] ORS 419B.040(1) provides:

"In the case of abuse of a child, the privileges created in ORS 40.230 to 40.255, including the psychotherapist-patient privilege, the physician-patient privilege, the privileges extended to nurses, to staff members of schools and to regulated social workers and the spousal privilege, shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 419B.010 to 419B.050."

make the required threshold showing necessary to be entitled to an *in camera* review.

As to preservation, we disagree with the state that defendant failed to preserve his argument on appeal. Although the state is correct that defendant did not specifically cite to ORS 419B.040(1) in his arguments to the trial court, the parties framed their arguments to the trial court in terms of *Reed*, which explains what standard a defendant in a child abuse case must satisfy to obtain an *in camera* review of the counseling records of a child abuse victim. 173 Or App at 197. The trial court's oral ruling indicated that it understood that defendant would be entitled to an *in camera* review of the counseling records if defendant made a sufficient threshold showing that those records might contain exculpatory evidence related to the abuse. In other words, we are persuaded that defendant's arguments adequately put the other parties and the trial court on notice of the position that defendant is now taking on appeal and, for that reason, conclude that defendant preserved his challenge to the trial court's denial of his request for an *in camera* review. *See Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (explaining that the "touchstone" of preservation is procedural fairness); *see also State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (clarifying that preservation determinations must be practical ones that turn on the particular record of a given case and ultimately ensure fairness by requiring presentation of arguments to the tribunal "so that parties are not taken by surprise, misled, or denied opportunities to meet an argument" (internal citation and quotation marks omitted)).

As to the trial court's determination regarding the sufficiency of defendant's threshold showing of entitlement to an *in camera* review of the CCMH counseling records, we review that determination for legal error.[2] *See Frease v.*

---

[2] The state argues that we review that determination for an abuse of discretion. In particular, as the state elaborated at oral argument, the state contends that, because the Supreme Court looked to *United States v. Zolin*, 491 US 554, 109 S Ct 2619, 105 L Ed 2d 469 (1989), in *Frease* to determine the necessary threshold showing for an *in camera* review, the Supreme Court implicitly adopted the abuse of discretion standard of review applied by the United States Supreme Court in *Zolin*. We disagree. The Supreme Court did not explicitly adopt *Zolin*'s standard of review and, beyond that, it is apparent from the court's application of the *Zolin*

*Glazer*, 330 Or 364, 373-74, 4 P3d 56 (2000) (reviewing for legal error a trial court's determination that plaintiff had met the threshold "might yield" requirement for *in camera* review); *see also Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 133, 20 P3d 837, *rev den*, 332 Or 518 (2001) (relying on the legal error standard of review set forth in *Frease* to apply a legal error standard to the "trial court's determination regarding the sufficiency of the factual showing"). Here, the trial court erred when it determined that defendant had not made a sufficient threshold showing to be entitled to an *in camera* review.

Under *Reed*, defendant was entitled to an *in camera* review of E's counseling records if defendant demonstrated that such a review "might yield" evidence subject to disclosure, notwithstanding the fact that those records were protected by the psychotherapist-patient privilege. 173 Or App at 197. To satisfy that "might yield" standard, defendant needed to provide the court with evidence that would support a reasonable belief that something in the records might be subject to disclosure. *Frease*, 330 Or at 373-74. Under *Hansen* and ORS 419B.040(1), exculpatory evidence related to the abuse charges against defendant would be subject to disclosure. *Hansen*, 304 Or at 180; *State ex rel Juv. Dept. v. Spencer*, 198 Or App 599, 608, 108 P3d 1189 (2005). That means that defendant was entitled to an *in camera* review of the CCMH counseling records if he demonstrated that there was a reasonable basis to think that those records could contain any exculpatory evidence related to the abuse.

He did so here. First, defendant demonstrated that E started counseling soon after defendant's arrest and E's interview with the Amani Center. That makes it reasonable to think that E discussed the abuse in her counseling sessions, and that her statements might be contained in her counseling records. Second, defendant demonstrated that during the Amani Center interview E had made equivocal statements about whether the abuse had, in fact, occurred. That makes it reasonable to think that her counseling

framework in *Frease* that the court was reviewing to determine whether the trial court legally erred when it concluded that the party seeking an *in camera* review failed to make the necessary threshold showing for that review.

records might contain evidence of similar equivocal—and thus exculpatory—statements regarding the abuse. As a result, defendant demonstrated that an *in camera* inspection might yield evidence subject to disclosure under *Hansen* and ORS 419B.040. The trial court erred in concluding otherwise.

That leaves the question of remedy, a question that is answered largely by *Cartwright*, 336 Or at 421, and *State v. Warren*, 304 Or 428, 435, 746 P2d 711 (1987). In *Warren*, the Supreme Court explained that the proper course of action is to remand to the trial court to conduct an *in camera* review of the records at issue to determine if there is material in the records to which the defendant should have had access for trial. 304 Or at 435; *see also State v. Wood*, 112 Or App 61, 67, 827 P2d 924 (1992) (same). Accordingly, on remand, the trial court must determine if there is evidence in the records to which the ORS 419B.040(1) exception to the psychotherapist-patient privilege applies. If, after conducting that review, the trial court does not identify material within the records that should have been disclosed to defendant, the court should reinstate the original judgment. *Wood*, 112 Or App at 67. Alternatively, if the court identifies material within the records that should have been disclosed to defendant, it should then allow defendant to make an argument that he was prejudiced by the nondisclosure. *Cartwright*, 336 Or at 421. "If, after hearing that argument, the trial court concludes that defendant's inability to use the materials could not have affected the verdict, then the court may make findings to support its conclusion and reinstate the original judgment of conviction. Unless the trial court can so conclude, however, it must order a new trial." *Id.*

Vacated and remanded.