ARMSTRONG, P.J.
*515 Defendant appeals a judgment of conviction for six counts of first-degree sexual abuse, ORS 163.427, for abusing his three step-daughters. Defendant raises 10 assignments of error and three additional supplemental pro se assignments. Of the 13 assignments, we reject all but one without extended written discussion.[1] We address defendant's second assignment of error, in which he assigns error to the trial court's refusal to conduct an in camera review of grand juror notes for evidence of inconsistencies between the grand jury and trial testimony of the step-daughters and their mother. The state responds that defendant failed to make a sufficient showing to establish that the evidence would have been material and favorable to his case. We conclude that defendant made a showing that was sufficient to require the trial court to conduct an in camera review of the grand juror notes, because the record indicated that the notes plausibly would disclose the existence of material impeachment evidence regarding one of the witnesses, and there were no countervailing considerations that could support a decision not to review the notes. Thus, we vacate and remand for the trial court to review in camera the grand juror notes for one witness.
Defendant was convicted of sexually abusing his three minor step-children in various ways over a period of years. The abuse allegedly occurred when the children were between six and 12 years of age. The alleged victims' accounts of the abuse differed slightly from one victim to the *516 next. Although defendant sought disclosure of grand juror notes of the testimony of all of the victims, he identified only one instance of a possible inconsistency between the trial and grand *279 jury testimony of one of the victims, L, which concerned Count 1 of the indictment.
Defendant was charged in Count 1 with rubbing his penis on L's vagina. However, L testified at trial that defendant had not done that. Rather, she testified that defendant had forced her to grab his erect penis, which is conduct for which defendant was not charged. In contrast, a police officer testified at trial that L had admitted to him that defendant had rubbed his penis against her vagina. In cross-examination of L and in closing argument, defendant highlighted inconsistencies in L's trial testimony as well as inconsistencies in L's report to a social worker and to an employee of Child Abuse Response and Evaluation Services (CARES), in addition to instances in which L had recanted her accusations against defendant. L sought to address all of that by explaining that she had testified truthfully at trial because she was testifying under oath. The jury convicted defendant of all counts, including Count 1, viz. , the count in which L had testified at trial that defendant had not engaged in the charged conduct.
Because the indictment indicates that L had testified before the grand jury, defendant argued to the trial court that L presumably had testified consistently with the allegations in the charged count, that is, by telling the grand jury that defendant had rubbed his penis on her vagina. Defendant also identified minor inconsistencies in the testimony of other witnesses. Thus, according to defendant, he was entitled to have the trial court conduct an in camera review of the grand juror notes to look for evidence of inconsistent testimony between the grand jury and trial testimony of the witnesses. The trial court disagreed with defendant and did not conduct the requested review.
Defendant argues on appeal that the trial court erred by refusing to conduct an in camera review of the notes taken by grand jurors. Defendant invokes the federal Due Process Clause, which requires the state to disclose to a defendant evidence that is in the state's possession or *517 control and that is material and favorable to the defendant.[2] See Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under Brady , a prosecutor violates a defendant's right to due process by failing to disclose evidence favorable to a defendant "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 83 S.Ct. 1194. Evidence is favorable to a defendant if it is exculpatory or if it could be used to impeach a government witness. See, e.g. , State v. Bray , 281 Or.App. 584, 599, 383 P.3d 883 (2016), rev. allowed , 361 Or. 543, 397 P.3d 30, 37 (2017). Material evidence is evidence that is not merely relevant but, rather, is evidence that "has a 'reasonable probability' of affecting the outcome of the proceeding." State v. West , 250 Or.App. 196, 204, 279 P.3d 354 (2012).
The parties disagree about the showing that defendant had to make to require the trial court to review the grand juror notes in camera . We recently explained in State v. Lammi , 278 Or.App. 690, 375 P.3d 547 ( Lammi I ), adh'd to as clarified , 281 Or.App. 96, 380 P.3d 1257 (2016) ( Lammi II ), rev. den. , 360 Or. 697, 388 P.3d 710 (2017), the two-step process under which a court must decide whether to conduct an in camera review of confidential material to determine if any of the material is subject to disclosure. The first step requires the party seeking such a review to make a threshold showing that it is reasonable to believe that the records for which review is sought contain evidence of sufficient import to the defendant's guilt to require disclosure of the evidence to the defendant. See Lammi II , 281 Or.App. at 98, 380 P.3d 1257.
The defendant made the threshold showing in Lammi II by demonstrating that "there was a reasonable basis to think that [the victim's counseling] records contained exculpatory statements by the victim about the charges against [the] defendant." Id. at 98, 380 P.3d 1257. The defendant made that showing in two ways. First, he demonstrated *280 that, in an earlier counseling session, the victim had "made equivocal statements about whether the abuse had, in fact, occurred." Lammi I , 278 Or.App. at 695, 375 P.3d 547. Thus, it was "reasonable to think that her counseling records might contain *518 evidence of similar equivocal-and thus exculpatory-statements regarding the abuse." Id. at 695-96, 375 P.3d 547. Second, the victim had started to receive counseling soon after the defendant's arrest, and, thus, it was "reasonable to think that [the victim had] discussed the abuse in her counseling session, and that her statements might be contained in her counseling records." Id. at 695, 375 P.3d 547. Thus, the defendant made a threshold showing that it was reasonable to believe that the counseling records contained evidence of sufficient import to his defense to require disclosure of that evidence if review of the records established that the evidence existed.
To establish that a defendant's due process rights were violated by a trial court's failure to conduct an in camera review of grand juror notes, the defendant must first "demonstrate that the items of which he sought review would have been material and favorable to his defense." State v. Cockrell , 284 Or. App. 674, 689, 395 P.3d 612, rev. den. , 361 Or. 886, 403 P.3d 772 (2017) (alterations omitted). Once the defendant establishes that the evidence that he seeks in the grand juror notes meets that standard, he must show that it is reasonable to believe that the notes contain that evidence. We applied that standard in State v. Bittner , 235 Or.App. 554, 564, 234 P.3d 1012, rev. den. , 349 Or. 370, 246 P.3d 482 (2010), in which we considered whether the defendant's due process rights were violated by a trial court's refusal to compel the production of evidence when the substance of the evidence was unknown. The defendant contended that the trial court had erred by denying his motion to compel the victim to disclose the names of two of the victim's friends, seeking to have the friends called to testify as witnesses. The defendant argued that the two friends would "appear to be material witnesses." Id. We concluded, however, that the defendant had failed to make a plausible showing that the potential witnesses would have provided testimony that was material and favorable to his defense, because his mere assertion that their testimony would have been material to his defense was insufficient to establish that. Id. at 564-65, 234 P.3d 1012 (citing United States v. Valenzuela-Bernal , 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) ); see also Pennsylvania v. Ritchie , 480 U.S. 39, 58 n.15, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ("[Defendant], of course, may not require the trial court to search through *519 the [confidential] file without first establishing a basis for his claim that it contains material evidence.").
After the required threshold showing has been made, the second step in the process requires the trial court to decide whether to undertake an in camera review of the material, considering, among other things, "the facts and circumstances of the particular case, the volume of materials at issue, the relative importance of information sought, and whether such information might be available from non-privileged sources." Lammi II , 281 Or.App. at 99, 380 P.3d 1257 (citing United States v. Zolin , 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) ).
We turn to the first step from Lammi to determine whether defendant made a plausible showing that an in camera review of the grand juror notes would disclose the existence of material, favorable evidence. Defendant identifies one, specific inconsistency in L's testimony. As explained earlier, defendant was indicted for, among other things, sexually abusing L when she was six or seven years old by "touching her vagina, a sexual or intimate part of [L], to wit: by rubbing his penis on her vagina in the storage room in the basement." Because the indictment noted that L had testified before the grand jury, defendant reasons that L probably testified to the grand jury consistently with the facts alleged in the indictment.[3] L testified at trial, however, that defendant did not rub his penis against her *281 vagina; rather, he made her grab his erect penis. Defendant points to that inconsistency between the indictment and L's trial testimony as a showing that L's testimony before the grand jury would plausibly have been different from her trial testimony about the encounter and, accordingly, that the grand juror notes plausibly would reflect that change in testimony. In defendant's view, the importance of that possible impeachment evidence is highlighted by the fact that L had testified that she was not fabricating at trial her account of the encounter because she was testifying under oath. Defendant concludes that it is reasonable to believe the grand juror notes would *520 disclose the existence of impeachment evidence demonstrating that L had changed her account of the encounter between her appearance before the grand jury and at trial and thus, had lied under oath either to the grand jury or at trial.
The state responds that-even if defendant is correct that L testified differently at trial than she did before the grand jury-any discrepancies in L's testimony before the grand jury is cumulative of evidence that defendant introduced at trial and, thus, evidence of such a discrepancy could not be material Brady evidence. The state notes that defendant cross-examined L on the inconsistencies in her accounts of sexual abuse, including that she had told the police detective, a social worker, and the CARES worker different versions of events from the version to which she had testified at trial, and that L had recanted her accusations against defendant. Additionally, the state contends that L's change in testimony was beneficial to defendant because she testified at trial that defendant had not touched her in the manner alleged in the indictment. Thus, according to the state, any impeachment evidence from the grand jury would have shown that L had testified to the grand jury consistently with the conduct charged in the indictment, which would not have been helpful to defendant.
We agree with defendant that he made a showing sufficient to establish a reasonable belief that a review of the grand juror notes would disclose the existence of material impeachment evidence. Because L's trial testimony on Count 1 contradicted the indictment, it is plausible that L testified to the grand jury in a manner consistent with the charged conduct, such that the grand juror notes of L's testimony would disclose the existence of material impeachment evidence. That evidence, in turn, would be of a type that is different from the other evidence that defendant used to impeach L, because it would show that L had lied under oath. Thus, we conclude that defendant made a sufficient showing that the grand juror notes plausibly would disclose the existence of material impeachment evidence.
We turn to the second step in the inquiry to determine whether the trial court should have conducted an in *521 camera review of the grand juror notes. Under the facts of this case, we conclude that it would be an abuse of discretion for the trial court to decide not to review the grand juror notes in camera , because the only way that defendant could obtain the potential evidence to impeach L was through the grand juror notes, and there is no reason to believe that review of the notes would impose an undue burden on the court. See Lammi II , 281 Or.App. at 100, 380 P.3d 1257 (concluding that trial court lacked discretion to choose not to review the evidence in camera , because the potential exculpatory evidence was not readily available from other sources and there was no indication that the records were particularly voluminous).
In sum, defendant was entitled to have the trial court conduct an in camera review of the grand juror notes of L's testimony for material impeachment evidence, and, accordingly, we vacate the judgment of conviction. If, after review, the trial court determines that the notes disclose the existence of material impeachment evidence, then defendant is entitled to a new trial. However, if, after review, the court determines that the notes do not contain information that meets that standard, then the court should reinstate the original judgment of conviction. See Lammi I , 278 Or.App. at 696, 375 P.3d 547 (explaining remedy for failing to conduct in camera review of evidence).
Vacated and remanded.

In his first assignment, defendant contends that he was entitled under State v. Hartfield , 290 Or. 583, 624 P.2d 588 (1981), to examine grand juror notes after one of the state's witnesses who had testified before the grand jury testified at trial inconsistently with the acts alleged in the indictment. After this case was submitted, we decided State v. Cockrell , 284 Or.App. 674, 683-84, 395 P.3d 612, rev. den. , 361 Or. 886, 403 P.3d 772 (2017), in which we rejected a similar argument. For the reasons stated there, we reject defendant's argument and do not address it further. In his third assignment, he asserts that the trial court erred by excluding other-acts evidence of crimes committed by one of the victims and her mother. And, in his fourth through tenth assignments, he assigns error to having been convicted by nonunanimous jury verdicts. We reject all of those assignments without written discussion. Finally, defendant's pro se assignments substantially deviate from the requirements of the Oregon Rules of Appellate Procedure in a way that frustrates our ability to review them, and, for that reason, we do not consider them.

We note that the state does not dispute that the grand juror notes were in its possession or control.

The police officer who testified at trial about L's abuse also testified before the grand jury, so it is possible that the indictment was based on the officer's testimony about L's account of the episode, and that L's version of events remained consistent between the grand jury and trial.