Submitted October 26, 2009, affirmed June 9, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LENARD CLAYTON BITTNER,
*Defendant-Appellant.*

Lincoln County Circuit Court
072823; A138319

234 P3d 1012

Peter Gartlan, Chief Defender, Appellate Division, and Susan Fair Drake, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Lenard Clayton Bittner filed the supplemental brief *pro se*.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Rosenblum, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

ROSENBLUM, P. J.

## ROSENBLUM, P. J.

Defendant appeals a judgment of conviction for multiple assault-related offenses. He assigns error to the trial court's denial of his motion to compel the victim to disclose at trial the names of two of his friends, which he claims violated his right to due process.[1] We conclude that defendant failed to demonstrate that either of the friends, had they been identified and called as witnesses, would have given evidence that was material and favorable to his defense. Accordingly, we affirm.

Defendant made the motion for the trial court to compel the victim to disclose the names of the two friends during the victim's testimony. The victim was the first witness at the trial. To place the trial court's ruling in context, we summarize the pertinent aspects of his testimony to the point of the court's ruling: The victim rented and lived in a camper on defendant's mother's property in Newport. Defendant and his mother, Betty Bittner, lived in the house on the property. On June 3, 2007, the victim, defendant, and Mrs. Bittner were in the house together. A friend of Mrs. Bittner's, Deborah Opperud, was there visiting as well. The victim, defendant, and Mrs. Bittner ordered Chinese food from a restaurant in Agate Beach. Mrs. Bittner and the victim drove to the restaurant to pick up the food and returned home. The order was not what defendant requested, and he got angry. The victim took his food and went to his camper. A few minutes later, Opperud joined the victim in the camper. Sometime thereafter, defendant called the victim from a pay phone at Beverly Beach and told him to pack his belongings and leave. Defendant said that he would be back in 10 minutes and that he would kill the victim if he was not gone. Opperud went back to the house to talk to Mrs. Bittner. It was dusk at that point.

The victim began packing some belongings, but defendant showed up within five minutes of having called. Defendant broke some of the camper's windows and then entered the camper. He grabbed the victim and pressed him

---

[1] Defendant makes other assignments of error in a *pro se* supplemental brief. We reject those assignments without discussion.

against the inside of the camper, holding him by the throat, and then held a machete up to his throat. The victim struggled with him and was able to push the machete away. Defendant then pushed the victim out of the camper and ordered him to take defendant's van and leave. Defendant allowed him to take his dog but nothing else. The victim drove to the home of a friend in Agate Beach.

About 15 or 20 minutes after he arrived at the friend's home, the victim spoke with Mrs. Bittner on the telephone. She told him that defendant was no longer at home and that he would be gone for a few hours. At approximately 10:30, the victim returned to the camper in the van to retrieve his belongings. Another friend accompanied him to help.

While they were in the camper, they heard defendant come out of the house, yelling, "I've never seen somebody so defiant." The victim told his friend to go back to the van, which he did. Defendant entered the camper carrying a large stick, which he used to beat the victim and to damage the camper and the victim's belongings. Defendant eventually stopped and let the victim out of the camper. The victim went to the van and drove away with his friend. He returned to Agate Beach and went back to the house of his other friend. Sometime thereafter, Mrs. Bittner and Opperud went to that house and persuaded the victim to go to the hospital. Mrs. Bittner drove him to the hospital, dropping Opperud off on the way there. At the hospital, the victim was interviewed by a police officer, Sergeant Turre. After he was examined and released, Mrs. Bittner drove him back to his friend's house in Agate Beach.

During cross-examination, defense counsel asked the victim who the friend in Agate Beach was. The victim replied, "He didn't want to be involved." Counsel asked on what street in Agate Beach the friend lived. The prosecutor objected on relevance grounds, and the court sustained the objection. Defense counsel again asked the victim to name the friend. The court interjected, "He's already indicated he's not giving it to you, and I'm indicating that it's not relevant to this proceeding. So you're not going to get the name." Counsel then asked the victim to explain why he was reluctant to

name the friend. The court again interjected, stating that the reason for the victim's reluctance was not relevant "and that's the end of it."

Later, defense counsel asked the victim to identify the person who had accompanied him to the camper. The victim answered, "He was reluctant to go with me, and he didn't want to be involved either. He was just there to help me get belongings out because I asked him." Defense counsel told him that "sometimes people may not want to be involved but have to be" and asked whether he was prepared to name the person. The victim said, "I don't see where it's relative—or relevant. He didn't see anything that happened." Counsel asked whether the friend had been present when defendant came into the camper. The victim replied, "No, when he heard [defendant's] voice he took off across the field and away from there. * * * He went back across out over a fence, came back around and got into the van. He didn't see anything that happened at all." He explained that his friend "bolted across because he knew how angry—because he knows [defendant] as well. * * * Someone that knows [defendant] doesn't want to be involved * * *." Counsel again asked for the person's name. The prosecutor objected, defense counsel asked to be heard on the issue, and the court sent the jury out.

Defense counsel stated:

"At this time I would ask the Court to order [the victim] to disclose the names of both persons. And, just to be clear, I'm referring to the friend—the person described as [the victim's] friend who lives in Agate Beach and the, what I now understand to be the second friend or other person who was with [the victim] when he returned to the camper.

"I understand that, for, perhaps, very good reasons, these persons don't want to be involved. I certainly don't have to tell the Court—well, these two individuals appear to be material witnesses. They have not been disclosed to me as far as I know. Well, I guess I don't know if they were disclosed to either the prosecutor's office—

"[THE VICTIM]: No, sir, they weren't.

"[DEFENSE COUNSEL]: —or to Sergeant Turre. I would submit—I mean, just to be plain, I have about a

hundred questions that I'd like to ask both of those individuals, certainly, with respect to the second person.

"And just to be clear, this is news to me. This is not provided in discovery. This is all brand new that I'm hearing for the first time. * * *

"But, my motion, at this time and on due process grounds among others and my client's right to a fair trial, I would ask for an order compelling the witness to disclose the names of both individuals that he has alluded or referred to."

The court denied the motion:

"Okay. I'm not going to require disclosure. I don't think there's any question the witness, whose house he stayed at for four or five days is not a material witness—not even a witness to anything that would be relevant in this case, other than maybe he saw injuries on him, but that's something the State doesn't have to double cover.

"As far as the other person, he may have heard some sounds. I don't find him to be a witness necessary to either the State or Defense case. I'm not going to require disclosure on that either.

"* * * * *

"If he had been present in the camper while the ruckus was going on then I might require disclosure."

The jury returned, and the trial continued.

After the victim finished testifying, the state called several other witnesses, including Mrs. Bittner, Opperud, and Turre. Mrs. Bittner corroborated the victim's testimony about ordering Chinese food and defendant becoming angry, but she denied having seen or heard anything assault-related and having called the victim and telling him that he could return to retrieve his belongings. Opperud testified that she had witnessed both assaults, and her testimony was largely consistent with the victim's, with some exceptions. Perhaps most significantly, although the victim testified that the second friend was in the van during the second assault and had seen nothing, Opperud testified that the friend got in the van at the same time the victim did and must have witnessed everything from behind a bush or a tree. Turre testified that

he arrested defendant a month after the assaults. According to Turre, when he arrested him, defendant "kept saying, 'I've got an alibi. I've got an alibi.' He [said that he] wasn't at the house when [the victim] was assaulted and that he probably—that [the victim] probably had one of his friends beat him so he could blame it on [defendant]."

After the state rested its case, defendant called one witness, Kenneth Heppner. He testified that, on the evening in question, defendant was with him from shortly after 8:00 p.m. until approximately 9:00 p.m. and that he left defendant at the home of another friend after making arrangements for him to spend the night there.

After Heppner finished testifying, the defense rested. The state offered no rebuttal. At no point during or after the presentation of evidence did defendant renew the motion to compel the victim to disclose the names of his two friends. The jury returned guilty verdicts on all of the charges related to the assaults on the victim.[2]

■　　On appeal, defendant contends that the trial court's decision not to require disclosure of the identities of the victim's friends violated his right to a fair trial under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[3] Defendant argues that the testimony of both people would have been highly relevant. Specifically, he asserts that the friend at Agate Beach could have testified about the victim's first explanation of what had happened to him as well as the victim's physical condition after the first alleged assault. Defendant asserts that the other friend witnessed the second alleged assault, citing Opperud's testimony that the friend got in the van at the same time as the victim and must have witnessed everything. In defendant's

---

[2] Defendant was also charged with possession and distribution of a controlled substance based on evidence found on his person when he was arrested. The jury acquitted him of the distribution charge but found him guilty of possession. Defendant does not challenge that conviction on appeal.

[3] Defendant does not allege a discovery violation by the state. *See Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963) (holding that the prosecution must disclose to the defense exculpatory evidence within its knowledge). Nor does he raise any statutory argument. Accordingly, we do not consider whether this case presents any such issues.

view, the testimony of the victim and Opperud could not substitute for the opportunity to examine the victim's two friends, or at least to interview them. He asserts that, because the trial court did not order the victim to name his friends, "the record cannot establish what they would have said. It may have been redundant or it may have been favorable to defendant."

Defendant also argues that neither the victim nor Opperud were necessarily credible. He notes that Mrs. Bittner testified that both she and defendant had asked the victim to move out of the camper, contending that the victim thus may have had a motive to fabricate the allegations against defendant. He also notes the discrepancies in the testimony of the victim and Opperud, implying that their testimony was not trustworthy.

The state responds that defendant was not denied a fair trial. It argues, among other things, that defendant offered little to support his motion for disclosure of the names of the victim's two friends, stating merely that they were "material witnesses," without any detail as to what important facts they likely would testify about.

■■ As defendant argues, due process mandates that a criminal defendant be given a fair trial. *United States v. Agurs*, 427 US 97, 107, 96 S Ct 2392, 49 L Ed 2d 342 (1976). However, depriving a defendant of evidence violates due process only if the evidence is favorable to the defense and is material—that is, only if there is a reasonable probability that the evidence would affect the outcome of the trial. *See Pennsylvania v. Ritchie*, 480 US 39, 57, 107 S Ct 989, 94 L Ed 2d 40 (1987) (" '[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " (quoting *United States v. Bagley*, 473 US 667, 682, 105 S Ct 3375, 87 L Ed 2d 481 (1985) (plurality opinion)).

Defendant acknowledges that, to make out a due process violation, he must demonstrate that the testimony of the victim's two friends would have been material and favorable to his defense. He contends, however, that, because the

trial court did not require the victim to identify his two friends, the record cannot establish that their testimony would have been favorable.

■ The Supreme Court has stated that the materiality requirement is "flexible," depending on the circumstances of the case. *See Bagley*, 473 US at 682 (plurality opinion); *id.* at 685 (White, J., concurring in part). For example, when, as here, a defendant has not had an opportunity to interview potential witnesses to determine what information they possess, the specificity required in showing materiality is relaxed. *United States v. Valenzuela-Bernal*, 458 US 858, 870, 102 S Ct 3440, 73 L Ed 2d 1193 (1982). However, even in that circumstance, the defendant still must show that the evidence would be material. *Id.*

*Valenzuela-Bernal* is illustrative. In that case, the defendant was charged with knowingly transporting an illegal alien after he and three passengers were arrested for failing to stop at a border patrol checkpoint. *Id.* at 861. All three passengers admitted that they were in the country illegally, and two of them were deported before the defendant's trial. The defendant argued that he could not receive a fair trial, contending that the two passengers' deportation had deprived him of the opportunity to interview them to determine whether they could aid in his defense.

The Supreme Court held that the defendant had failed to make the materiality showing necessary to establish a due process violation. *Id.* at 872. The Court stated that, although the fact that the defendant was not "afforded an opportunity to interview the deported witnesses to determine what favorable information they possessed * * * may well support a relaxation of the specificity required in showing materiality," it did not "afford[ ] the basis for wholly dispensing with such a showing."[4] *Id.* at 870. It explained that, when

---

[4] Much of the Court's discussion of the materiality requirement in *Valenzuela-Bernal* was in the context of a claimed violation of the Compulsory Process Clause of the Sixth Amendment. However, the Court stated that it had borrowed much of its reasoning with respect to the Compulsory Process Clause from cases involving the Due Process Clause and that it had "little difficulty holding that at least the same materiality requirement obtains with respect to a due process claim." 458 US at 872. Accordingly, we rely on the Court's explanation of materiality in *Valenzuela-Bernal* in analyzing defendant's due process claim.

a defendant has not had an opportunity to interview a witness, "it is of course not possible to make any avowal of how a witness may testify. But the events to which a witness might testify, and the relevance of those events to the crime charged, may well demonstrate either the presence or absence of the required materiality." *Id.* at 871. The Court explained further:

"Because prompt deportation deprives the defendant of an opportunity to interview the witnesses to determine precisely what favorable evidence they possess, * * * the defendant cannot be expected to render a detailed description of their lost testimony. But this does not * * * relieve the defendant of the duty to make some showing of materiality. Sanctions may be imposed on the Government for deporting witnesses only if the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses. In some cases such a showing may be based upon agreed facts, and will be in the nature of a legal argument rather than a submission of additional facts. In other cases the criminal defendant may advance additional facts, either consistent with facts already known to the court or accompanied by a reasonable explanation for their inconsistency with such facts, with a view to persuading the court that the testimony of a deported witness would have been material and favorable to his defense. Because in the latter situation the explanation of materiality is testimonial in nature, and constitutes evidence of the prejudice incurred as a result of the deportation, it should be verified by oath or affirmation of either the defendant or his attorney.

"As in other cases concerning the loss of material evidence, sanctions will be warranted for deportation of alien witnesses only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact. In making such a determination, courts should afford some leeway for the fact that the defendant necessarily proffers a description of the material evidence rather than the evidence itself. Because determinations of materiality are often best made in light of all of the evidence adduced at trial, judges may wish to defer ruling on motions until after the presentation of evidence."

*Id.* at 873-74 (citations and footnotes omitted). The Court affirmed the defendant's conviction after concluding that he had "made no effort to explain what material, favorable evidence the deported passengers would have provided for his defense." *Id.* at 874.

The Court reaffirmed the materiality requirement in *Ritchie*. In that case, the defendant was charged with a number of sex offenses based on alleged repeated assaults against his daughter. 480 US at 43. Before trial, he subpoenaed records from Pennsylvania's Children and Youth Services (CYS), which had investigated the allegations, asserting that the records "might contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence." *Id.* at 44. CYS refused to disclose the records, and the trial court declined to order that they be disclosed.

The Supreme Court acknowledged that, "[a]t this stage, of course, it is impossible to say whether any information in the CYS records may be relevant to Ritchie's claim of innocence, because neither the prosecution nor defense counsel has seen the information, and the trial judge acknowledged that he had not reviewed the full file." *Id.* at 57. It held that the defendant was "entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial." *Id.* at 58. However, citing *Valenzuela-Bernal*, the Court stated in a footnote, "Ritchie, of course, may not require the trial court to search through the CYS file without first establishing a basis for his claim that it contains material evidence." *Id.* at 58 n 15 (citation omitted).

In this case, although it is impossible to say what the testimony of the victim's two friends would have been, to make out a claim that allowing the victim to refuse to identify them violated defendant's due process right to a fair trial, defendant was nevertheless required to "at least make some *plausible showing* of how their testimony would [be] both material and favorable to his defense." *Valenzuela-Bernal*, 458 US at 867 (emphasis added).

Defendant's bare assertion to the trial court that "these two individuals appear to be material witnesses" did not satisfy that burden. Defendant did not explain in any way

to the court how their testimony would have had a reasonable probability of affecting the jury's decision. He also failed to make even a plausible showing that their testimony would be favorable to his defense. Defendant did not inform the court that his defense theory would be that he was not on his mother's property when the victim's injuries were inflicted,[5] let alone make a plausible showing that the testimony of either of the victim's two friends would support that theory or, at the least, in some way cast doubt on the prosecution's case. Nor did he make a plausible showing that their testimony would not be "merely cumulative to the testimony of available witnesses." *Id.* at 873. Furthermore, defendant did not renew the motion or otherwise ask the court to reconsider the issue at the close of evidence, when the court could assess the potential favorability of their testimony in light of all the evidence presented, including Heppner's alibi testimony and Opperud's testimony about what the second friend must have seen.[6]

Given the evidence that was before the trial court when defendant made the motion to compel the victim to identify the two friends and the conclusory nature of his argument in support of the motion, we cannot say that the court erred. Defendant did not show that the testimony of either of the two friends was material—that is, there was a reasonable probability that it would change the outcome of the proceeding, *Ritchie*, 480 US at 57—or that it would have been favorable to his defense. Accordingly, we reject defendant's argument that the trial court erred in denying his motion to compel the victim to identify them.

Affirmed.

---

[5] Defense counsel did not indicate in his opening statement that defendant would be advancing an alibi defense. Defendant did serve the prosecutor with a "notice of intent to rely on evidence of alibi," a copy of which is in the trial court file.

[6] We express no opinion as to whether the record at the conclusion of the presentation of evidence would have been sufficient to demonstrate materiality and favorability to the defense, had defendant renewed the motion.