Argued and submitted October 6, 2015; reversed and remanded on paragraph M of petitioner's seventh claim for relief, as to counsel's failure to object to physical restraint, otherwise affirmed April 12, 2017

## MICHAEL RAY CLARK,
*Petitioner-Appellant,*

*v.*

## Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
12069496P; A155558

395 P3d 32

Bear Wilner-Nugent argued the cause and filed the briefs for appellant.

Rebecca M. Auten, Assistant Attorney General, argued the cause for respondent. On the brief were Frederick M. Boss, Deputy Attorney General, Anna M. Joyce, Solicitor General, and Kathleen Cegla, Assistant Attorney General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge pro tempore.

**FLYNN, J., pro tempore**

In this post-conviction case, petitioner seeks relief from his conviction for first-degree rape, ORS 163.375. On appeal, petitioner assigns error to the post-conviction court's denial of two claims for relief that are based on the allegation that petitioner was restrained by a leg brace during his criminal trial without findings to justify the restraint—both a "stand-alone" claim that the restraint violated his state and federal constitutional rights as well as a claim that he was denied constitutionally adequate and effective assistance of counsel, in violation of Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution,[1] when his trial attorney failed to object to the restraint. Petitioner also assigns error to the post-conviction court's refusal to issue a subpoena to the victim to provide testimony that, petitioner contends, would have helped him prove other allegations of ways in which petitioner's defense attorney was constitutionally inadequate and ineffective. We conclude that the court did not err in denying petitioner's "stand-alone" claim regarding the leg restraint and did not err in refusing to allow petitioner to subpoena the victim. However, we conclude that the post-conviction court erred in denying the claim based on counsel's failure to object to the restraint, because the court applied an overly narrow test in finding no prejudice. We reverse and remand as to that claim and otherwise affirm.[2]

## I.  BACKGROUND

A jury convicted petitioner of two counts of first-degree rape. Although petitioner denied having had any

---

[1] The Oregon Constitution guarantees the right to adequate assistance of counsel, while we refer to effective assistance of counsel under the United States Constitution. Although the relevant constitutional provisions "are 'worded differently,' they 'embody similar objectives.'" *Green v. Franke*, 357 Or 301, 311, 350 P3d 188 (2015) (quoting *Krummacher v. Gierloff*, 290 Or 867, 871, 627 P2d 458 (1981)).

[2] Petitioner's fourth assignment of error challenges the trial court's determination that petitioner was not denied constitutionally adequate and effective assistance of counsel by his trial attorney's failure to impeach the victim with evidence of some admissible felony convictions. We conclude that evidence in the record supports the trial court's finding that petitioner suffered no prejudice from the failure because "the evidence was crystal clear that this [victim] violated the law with impunity," and we reject petitioner's fourth assignment of error without further written discussion.

sexual contact with the victim, much of the evidence at petitioner's criminal trial was undisputed. At the time that the victim reported the rape, she and petitioner both lived with petitioner's mother. Petitioner lived in a trailer on the property, and the victim was staying in the mother's house. The victim was involved in an intimate relationship with D, whom petitioner had known for many years, who was also staying at the house. The day before the incident, petitioner and D had brought the victim back from a house where she had been staying for several days and using methamphetamine.

The following morning, petitioner and the woman whom he was dating at the time returned to his trailer after using methamphetamine and staying awake most of the night. While the woman took a shower in petitioner's trailer, petitioner walked to the main house to use the shower and do laundry, bringing with him methamphetamine and a syringe. When he knocked on the door, the victim let him in. Later that morning, the victim called D at work and told him that she had been raped by petitioner. D called petitioner's mother, who called the police.

The victim reported that, after she let petitioner into the house, they had talked for a bit, he had injected her with methamphetamine, and she had immediately collapsed and lost consciousness. She awoke to petitioner raping her. At trial, a criminologist testified for the state that the victim's DNA was found on petitioner's penis in a concentration that indicated contact with a "high source of DNA," such as the vagina, mouth, or mucous. There were also injuries to the victim's vaginal wall consistent with "forceful intercourse."

Petitioner denied having given the victim drugs or having had any sexual contact with her. He testified at his criminal trial that, for some time, he had suspected that the victim was taking his mother's financial documents in an attempt to commit identity theft. When the victim let petitioner into the house on the morning of the incident, petitioner tried to confront her about his suspicion, but she appeared to have used methamphetamine and was too distracted to have that conversation. Petitioner then went to the bathroom to take a shower, but the victim followed him,

took off her clothes and tried to get into the shower with him. He testified that the victim slipped and fell on him in his groin area.

Throughout his trial, petitioner was required to wear a leg brace under his pants. The brace fit around petitioner's leg from mid-calf to mid-thigh and was made of hard plastic.

In this post-conviction proceeding, petitioner alleged that his criminal trial counsel had been suffering from a drug addiction at the time of petitioner's trial and had been arrested for driving under the influence of controlled substances just four days before the trial. He alleged that the attorney's condition made him "functionally absent," thus depriving petitioner of his right to counsel. Petitioner also alleged numerous specific ways in which his attorney's performance denied petitioner constitutionally adequate and effective assistance of counsel. As pertinent to this appeal, petitioner alleged that his attorney failed to object to petitioner being required to wear the leg restraint, failed to hire an investigator, failed to adequately cross-examine the victim about potential bias, failed to adequately examine defense witnesses, and failed to seek a continuance or move for a mistrial when the victim failed to "appear as ordered to testify as a witness for the defense." The post-conviction court denied all of petitioner's claims for relief.

## II. ANALYSIS

A court must grant post-conviction relief when there has been a "substantial denial" of a federal or state constitutional right, "which denial rendered the conviction void." ORS 138.530(1)(a). The constitutional right to counsel is the right to "adequate performance by counsel concerning the functions of professional assistance which an accused person relies upon counsel to perform on his behalf." *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (internal quotation marks omitted); *see also Strickland v. Washington*, 466 US 668, 686, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (United States Constitution requires not just counsel, but "effective" counsel). To prevail on a claim that he has been denied

constitutionally adequate assistance of counsel, a petitioner has the burden to show,

> "by a preponderance of the evidence, (1) deficient performance (*i.e.*, that trial counsel failed to exercise reasonable professional skill and judgment based on the law at the time trial counsel acted) that resulted in (2) prejudice to the petitioner (*i.e.*, that trial counsel's deficient performance had a tendency to affect the result of the petitioner's prosecution)."

*Real v. Nooth*, 268 Or App 747, 752, 344 P3d 33, *rev den*, 357 Or 550 (2015). When considering trial counsel's performance, we "make every effort to evaluate a lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight." *Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002).

## A. *Leg Restraint Claims*

We begin by addressing petitioner's claims that he was entitled to post-conviction relief because he was forced to wear a leg brace during his criminal trial, without findings to support use of the restraint. The Oregon Supreme Court "long has recognized the right of a criminal defendant to appear free of physical restraints during a jury trial." *State v. Washington*, 355 Or 612, 627, 330 P3d 596, *cert den*, ___ US ___, 135 S Ct 685 (2014) (internal quotation marks omitted). As the court explained in *Washington*,

> "[t]hat right is grounded in Article I, section 11, of the Oregon Constitution, which guarantees a defendant the right to a public trial by an impartial jury and the right to be heard 'by himself [*sic*] and counsel,' and in the Sixth Amendment to the United States Constitution, which provides in part that, '[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence [*sic*].'"

*Id.* at 628 (alterations in *Washington*). This court has described the right as also implicating "the fair trial requirement in the Due Process Clause of the Fourteenth Amendment." *Sproule v. Coursey*, 276 Or App 417, 421-22, 367 P3d 946, *rev den*, 359 Or 777 (2016) (citing *State v. Wall*, 252 Or App 435, 437 & n 1, 287 P3d 1250 (2012), *rev den*, 353 Or 280 (2013)).

Although "a trial court has discretion to order physical restraint of a defendant if there is sufficient evidence of a substantial risk of dangerous or disruptive behavior," that decision may only be made after the trial court hears "relevant evidence from the state and the defendant" and makes "a record of its factual findings and reasoning in support of its order." *Washington*, 355 Or at 628. A determination that the "defendant poses a security concern is necessary before a court requires a defendant to appear in court wearing a restraint, even if the restraint is not visible to the jury." *Sproule*, 276 Or App at 422.

In this case, there is no dispute that petitioner was required to wear a leg restraint without the benefit of an evidentiary hearing and factual findings to support the need for restraint. Petitioner relies on that deficiency to support both a "stand-alone" claim that the use of the leg restraint deprived him of his constitutional rights as well as a claim that petitioner was denied constitutionally adequate and effective representation when his trial attorney failed to object to the restraint.

1. *Unconstitutional restraint as a "stand-alone" claim*

Although the post-conviction court appears to have rejected petitioner's "stand-alone" claim on the merits, the state[3] argues, as a cross-assignment of error, that the claim should be rejected as procedurally barred. We agree. A petitioner seeking post-conviction relief may only assert a ground for relief if "such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding." ORS 138.550(2); *see also Palmer v. State of Oregon*, 318 Or 352, 358, 867 P2d 1368 (1994) ("When a criminal defendant fails to raise an issue at trial that the defendant reasonably could have been expected to raise, the defendant cannot obtain post-conviction relief on that ground unless the defendant alleges and proves that the failure to raise the issue was due to one (or more) of a few narrowly drawn exceptions."). A claim of unconstitutional physical restraint is one that can be, and is, raised at trial and on direct appeal. *See, e.g., Washington*, 355 Or at

---

[3] Throughout this opinion, we will refer to defendant as "the state."

622-30; *Wall*, 252 Or App at 436. That claim is, thus, not a ground for post-conviction relief.[4]

## 2. *Counsel's failure to object to restraint*

The procedural bar does not apply to petitioner's claim that his trial counsel was constitutionally inadequate and ineffective when he failed to object to the restraint. *See Palmer*, 318 Or at 358 (describing one of the exceptions to the procedural bar of ORS 138.550). The post-conviction court denied this claim, because it was "not convinced that the jury was aware of" the restraint, and it did not consider whether petitioner's attorney had any reasonable basis for failing to object to the restraint. Petitioner argues that the post-conviction court erred, because he suffered prejudice beyond the harm that would result from the jury being aware of the restraint.

Before considering the question of prejudice, we consider the state's suggestion that, rather than reach the issue of prejudice, we should affirm on the basis that petitioner failed to prove "that all reasonable counsel *would have objected* to the use of a leg brace during trial." (Emphasis in original.) The state acknowledges that the post-conviction court does not appear to have rejected petitioner's claim on this basis, and we decline to affirm on that alternative basis. As a legal proposition, all counsel exercising reasonable professional skill and judgment would have recognized that an objection would bring to the court's attention the obligation to determine that the defendant poses a security risk before requiring the defendant to wear restraints, even if the restraints are not visible from the jury. Although we had yet to make that requirement explicit at the time of petitioner's criminal trial, our decisions prior to petitioner's trial held that it was error for a court to impose physical restraints without adequate findings, even when those restraints were likely to remain hidden. *See State v. Schroeder*, 62 Or App 331, 338 & n 5, 661 P2d 111, *rev den*, 295 Or 161 (1983); *State v. Bird*, 59 Or App 74, 77-78, 650 P2d 949, *rev den*, 294 Or 78 (1982). We had emphasized that many of the harms

---

[4] Petitioner argues that *Palmer* was wrongly decided, but that is an argument for the Supreme Court. We also reject without written discussion petitioner's argument that this court must ignore ORS 138.550(2) and *Palmer* because defendant initially disclaimed reliance on *Palmer* at an early telephonic hearing.

from visible physical restraints apply equally well to hidden restraints such as leg braces, because the unjustified use of physical restraints "inevitably tends to confuse and embarrass [a defendant's] mental faculties, and thereby materially to abridge and prejudicially affect [the defendant's] constitutional rights of defense." *State v. Long*, 195 Or 81, 91, 244 P2d 1033 (1952) (quoting *Eaddy v. People*, 115 Colo 488, 491, 174 P2d 717, 718 (1946)).

Finally, we had explicitly identified as an open question "whether a court must find that [a] defendant poses an immediate and serious risk of dangerous or disruptive behavior before ordering him to wear" a nonvisible restraint and noted that the difference between visible and hidden restraints "may be a distinction without a difference under Oregon law." *State v. Bates*, 203 Or App 245, 249 & n 3, 125 P3d 42 (2005), *rev den*, 340 Or 483 (2006). Given that state of the law, all counsel exercising reasonable professional skill and judgment would have recognized that petitioner could not be required to wear the leg restraint without a factual basis to justify it.

The state points out the possibility that petitioner's trial counsel could have been aware of circumstances that caused him reasonably to conclude that an objection would be unsuccessful. But that possibility implies a question of fact that the post-conviction court did not reach, and which it must determine in the first instance. It is, therefore, not an alternative basis on which we can affirm.

We, thus, consider whether the post-conviction court properly determined that petitioner suffered no prejudice from the lack of an objection to the leg restraint merely because the jury was "not aware" of petitioner's leg restraint. Although this court has held that there is a presumption of prejudice when the petitioner was restrained in his criminal trial "in a manner that could not be effectively shielded from the jury's view," the petitioner must submit evidence of prejudice, as in any other post-conviction case, when—as in this case—the petitioner was restrained in his criminal trial in a manner that is not visible to the jury. *Sproule*, 276 Or App at 424-25 (distinguishing *Cunningham v. Thompson*, 186 Or App 221, 244, 62 P3d 823, *adh'd to as modified on recons*,

188 Or App 289, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004), and *Davis v. Armenakis*, 151 Or App 66, 72, 948 P2d 327 (1997), *rev den*, 327 Or 83 (1998)).[5] As we reiterated in *Sproule*, our cases have identified three types of prejudice that can potentially result from the erroneous restraint of a criminal defendant during a trial. *Id.* at 424. Those three types of prejudice are:

> "(1) impingement on the presumption of innocence and the dignity of judicial proceedings; (2) inhibition of the accused's decision whether to take the stand as a witness; and (3) inhibition of the accused's consultation with his or her attorney."

*Id.* (internal quotation marks omitted); *see also Wall*, 252 Or App at 438 ("Although most often invoked as a safeguard against potential jury prejudice, the right to stand trial without restraints also ensures that defendants may face the court with the appearance, dignity and self-respect of a free and innocent [person]." (Alteration in original; internal quotation marks omitted.)).

In *Sproule*, because the post-conviction court implicitly found that the jury was not aware that the petitioner was restrained by a leg brace worn under his pants, and because the petitioner presented no evidence that the leg brace either inhibited his decision to take the stand as a witness or limited his ability to consult with counsel, we determined that the petitioner failed to prove that his trial counsel's failure to object to the leg brace "had a tendency to affect the result of his trial." 276 Or App at 424-26 (internal quotation marks omitted).

As in *Sproule*, the post-conviction court here found—explicitly—that petitioner failed to prove that the jury was aware of his leg brace, and that finding is supported by the evidence. Unlike *Sproule*, however, there is evidence from which a factfinder could find that the leg restraint caused petitioner to suffer prejudice in one of the other ways that we have identified. Although petitioner specifically argued to

---

[5] The state argues that this court should overrule *Davis* as "contrary to the post-conviction statutes and binding precedent." We need not reach that argument here, however, because this case is distinguishable from *Davis* for the same reasons that *Sproule* distinguished *Davis*.

the post-conviction court that the constitutionally relevant harm from restraints extends beyond the question of whether the jurors could see the restraints, the post-conviction court clearly based its rejection of the claim solely on the finding that the jury was unaware of the restraint. Because that is not the only measure of prejudice, we remand for the post-conviction court to reconsider petitioner's claim that he was denied constitutionally adequate and effective counsel by his attorney's failure to object to petitioner being forced to wear the leg restraint without findings to support it.[6]

## B. *Denial of a Victim Subpoena*

Because petitioner's remaining assignment of error would have a bearing on the scope of the proceedings on remand, we also consider petitioner's argument that the post-conviction court erred in denying his request for an order, pursuant to ORS 138.625, allowing petitioner to issue a subpoena to the victim to appear and provide testimony at a deposition and at the post-conviction hearing. That statute provides, in pertinent part:

> "(1)   A petitioner in a post-conviction proceeding may not compel a victim to testify, either by deposition, hearing or otherwise unless the petitioner moves for an order of the court allowing a subpoena.
>
> "* * * * *
>
> "(3)   The court may not grant an order allowing a subpoena under this section unless the petitioner can demonstrate good cause by showing that the victim has information that is material to the post-conviction relief proceeding, is favorable to the petitioner and is other than what was admitted at trial."

ORS 138.625.[7]

---

[6] As indicated above, the state has raised the possibility that petitioner failed to prove the restraint was unjustified. That argument has a bearing on the question of prejudice as well as on whether counsel performed adequately. However, the post-conviction court made no findings on this point, and the record would support a finding that an objection would have had a tendency to affect the outcome. Thus, this factual question is an aspect of the prejudice determination for the court to resolve on remand.

[7] Amendments to the statute took effect after the post-conviction court's ruling on petitioner's motion. Or Laws 2013, ch 144, § 2. All citations here are to the version in effect at the time of the ruling.

In support of his motion to subpoena the victim, petitioner submitted an affidavit from D, who was married to the victim at the time of trial. D averred that the victim had admitted to him, after the trial, that she lied about the rape to protect her relationship with D:

> "She apologized to me and told me that she was scared that I would leave her if she did not testify against [petitioner]. I then asked her if she sent [petitioner] to prison on a false rape charge. [The victim] said that she believed that I would be mad at her for doing drugs with [petitioner] on the day of the alleged rape and was worried that I would have ended our relationship as a result, so she made up the story that [petitioner] raped her."

Petitioner argued in his motion that the affidavit established good cause to believe that the victim possessed information that would permit the issuance of a subpoena.

The trial court refused to allow the subpoena, seemingly on the basis that petitioner failed to show that the victim's testimony would be material to the post-conviction claim:

> "I'm going to deny the motion to subpoena the victim. I think regarding * * * the recantation, I don't think that's a proper—I don't know how that's going to lead anywhere * * * in terms of a PCR what the attorney could have done. I'm sure if the attorney would've talked to [the victim] prior to trial, based on her testimony at trial, she wouldn't have just told him, [']no, I'm going to lie at trial.[']

> "Regarding * * * the reason for fabrication, I think it's the same thing. I think [the victim] testified at trial what she testified at. [*sic*] She might have had reservations afterwards but I'm not sure * * * the trial attorney could've done anything about that or got that information out prior to trial."

On appeal, the state urges us to affirm the court's ruling as a permissible exercise of discretion, while petitioner argues that the court had no discretion to deny the subpoena because he showed that the victim possesses information that would be material and favorable to his post-conviction claim. We need not resolve the parties' dispute about the role of discretion under ORS 138.625 in this case, however, because we do not understand the trial court to have

denied the subpoena in an exercise of discretion. Rather, we understand the trial court to have concluded that information that petitioner believed he could obtain from the victim would not be "material to the post-conviction relief proceeding," and we conclude that whether a victim's information is "material" to the proceeding is an objective standard that we review for errors of law.

Our task is, thus, to determine what the legislature intended by the requirements that the information be "material to the post-conviction relief proceeding" and that the petitioner "show[] that the victim has" such information. As with all matters of statutory construction, our goal is to discern the legislature's intent, and we do so by giving "primary weight" to the text and context, as well as by considering any legislative history that "appears useful to the court's analysis." *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

1. *Information "material to the post-conviction relief proceeding"*

We begin with the easy observation that, whatever standard the legislature intended by information that is "material," the information must be material "to the post-conviction relief proceeding," *i.e.*, material to the elements that the petitioner must prove in the post-conviction proceeding. Thus, when a petitioner alleges a claim of inadequate assistance of counsel, the petitioner must show that the victim has information that is "material" to whether "trial counsel failed to exercise reasonable professional skill and judgment" or to whether counsel's "deficient performance had a tendency to affect the result of the petitioner's prosecution." *See Real*, 268 Or App at 752.

Information is "material" to a decision, in both lay and legal usage of the adjective, if the information has a connection to the decision, but the definitions vary in degree from having "some logical connection" to having a "probable bearing" on the decision. *See Black's Law Dictionary* 1124 (10th ed 2014) (as applicable, defining "material" to mean "[h]aving some logical connection with the consequential facts," and "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant;

essential"); *Webster's Third New Int'l Dictionary* 1392 (unabridged ed 2002) (as applicable, defining "material" to mean "relevant, pertinent," and "requiring serious consideration by having a certain or probable bearing on the proper determination of a law case * * * or on some similar unsettled matter"); *see also Mize v. Comcast Corp-AT & T Broadband*, 208 Or App 563, 569, 145 P3d 315 (2006) (emphasizing that there are "multiple definitions of the adjective 'material'").

Case law defining the term "material" reflects that same range of meaning. For example, the concept of "materiality" is subsumed in the definition of "relevant" evidence, OEC 401. *State v. Clowes*, 310 Or 686, 691 n 6, 801 P2d 789 (1990). Evidence meets that test if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. The adjective "material" refers to a somewhat more demanding standard when used to describe the test for information that a criminal defendant is constitutionally entitled to discover. *State v. Bray*, 281 Or App 584, 599, 383 P3d 883 (2016) (describing the due process right to prosecutorial disclosure of material, exculpatory evidence that the United States Supreme Court established in *Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963)); *State v. West*, 250 Or App 196, 203-04, 279 P3d 354 (2012) (describing evidence that a defendant is entitled to subpoena under the compulsory process clauses of the Oregon Constitution, Article I, section 11, and the Sixth Amendment to the United States Constitution). As we explained in *Bray*, "'[m]ateriality' includes not only relevance; it also encompasses a requirement that the state's failure to disclose the evidence be prejudicial." 281 Or App at 599.

We acknowledged in *Bray* that "the well-settled standard for 'materiality' is imprecise and subjective." *Id.* However, the "'touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence'" the trial resulted "'in a verdict worthy of confidence.'" *Id.* at 600 (quoting *Kyles v. Whitley*, 514 US 419, 434, 115 S Ct 1555, 131 L Ed 2d 490 (1995)).

We assume that the legislature was aware of those well-established legal meanings for the term "material" when it used it in ORS 138.625. *See Joshi v. Providence Health System*, 342 Or 152, 158, 149 P3d 1164 (2006) (assuming that, when the legislature used the term "caused" in a statute, "the legislature intended to incorporate the legal meaning of that term that [the Supreme Court] has developed in its cases"). Of course that principle of statutory construction does not resolve which well-established standard for "material" the legislature had in mind when it adopted ORS 138.625 in 2007. But the legislative history reflects an intent to allow post-conviction petitioners to subpoena the victim to provide testimony only when the petitioner can show that the victim's testimony meets the more rigorous standard of "material" that determines whether a criminal defendant is constitutionally entitled to evidence.

Representative Jeff Barker, one of the sponsors of the bill, spoke on the House floor and explained that a key impetus for the bill was the case of a family in which eight children had been raped and sodomized by a neighbor and then were retraumatized by having to "go through the rapes, their sodomization all over again" when their attacker subpoenaed them for his post-conviction case. Audio Recording, House Floor Debate, SB 985, June 4, 2007, Morning Session at 01:04:00 (statement of Rep Jeff Barker), https://olis.leg.state.or.us (accessed Mar 27, 2017).

Senator Alan Bates, another sponsor of the bill, described the same motivation for the bill when he spoke on the Senate floor. He gave the example of a different victim of rape and kidnapping, who was "emotionally stricken and nearly hysterical upon receiving" a subpoena 10 years "after she had believed that her trauma was over." Audio Recording, Senate Floor Debate, SB 985, Apr 3, 2007, at 1:00:20 (statement of Sen Alan Bates), https://olis.leg.state.or.us (accessed Mar 27, 2017). He emphasized that, under the existing system, victims could be compelled to provide testimony in the post-conviction proceeding "without any showing of need" for that testimony "and without any showing that the victim is likely to provide any new evidence that will benefit the criminal offender." *Id.* at 58:40. Senator Bates explained that the bill "does not take away

the right of * * * a criminal offender to subpoena a victim," but that it "places the burden on the offender to convince the court that there is a reason that the victim is needed." *Id.* at 1:00:50. Those statements convince us that the legislature intended to protect victims from being subpoenaed for a post-conviction proceeding unless they possess information that is sufficiently likely to affect the post-conviction determination that it would undermine confidence in that determination if the court were to proceed without the victim's testimony.

2. *A "showing that the victim has information"*

Our conclusion regarding the standard for whether the victim has information that is "material" to the post-conviction proceeding leaves the question of how a petitioner makes a "showing" that the victim has such information. Because we have determined that the legislature intended the "materiality" standard in ORS 138.625 to be equivalent to the standard used to determine whether a criminal defendant is constitutionally entitled to discover information, we also look to cases describing how a defendant makes that showing of materiality. Pertinent to that inquiry is *State v. Bittner*, 235 Or App 554, 234 P3d 1012, *rev den*, 349 Or 370 (2010), in which we emphasized that, "when a defendant has not had an opportunity to interview a witness, 'it is of course not possible to make any avowal of how a witness may testify,'" but the defendant must still make "'a plausible showing that the testimony of the [missing] witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses.'" *Bittner*, 235 Or App at 562-63 (quoting *United States v. Valenzuela-Bernal*, 458 US 858, 871, 873, 102 S Ct 3440, 73 L Ed 2d 1193 (1982)).

In *Bittner*, we considered whether the defendant showed that two friends of the victim would have provided testimony that had a "reasonable probability" of affecting the outcome of the case (*i.e.*, "a probability sufficient to undermine confidence in the outcome"). *Id.* at 561 (internal quotation marks omitted). The defendant in *Bittner* was charged with multiple assaults against the same victim. The victim testified that, after an initial assault, he had driven

from his residence to a friend's house. Then, during a later assault that took place in the victim's residence, a second friend was present outside. The defendant sought to have the victim reveal the identities of the two friends, arguing that the first friend "could have testified about the victim's first explanation of what had happened" and that the second friend must have witnessed the second assault. *Id.* at 560. However, the defendant made no attempt to explain to the court how the friends' testimony might support his defense theory, which was that he had not been present when the victim was injured. He "did not explain in any way to the court how [the friends'] testimony would have had a reasonable probability of affecting the jury's decision." *Id.* at 564-65. Thus, we concluded that the defendant failed to meet that burden, because he failed to "make a plausible showing that the testimony of either of the victim's two friends would * * *, at the least, in some way cast doubt on the prosecution's case. Nor did he make a plausible showing that their testimony would not be 'merely cumulative to the testimony of available witnesses.'" *Id.* at 565 (quoting *Valenzuela-Bernal*, 458 US at 873).

Similarly, in *State v. Wixom*, 275 Or App 824, 842, 366 P3d 353 (2015), *rev den*, 359 Or 166 (2016), we held that the defendant failed to show that a Department of Human Services (DHS) file he sought to discover "would have been material and favorable" to his case. We explained that the defendant's showing was insufficient, because he made only "vague assertions in the trial court that there were 'things' in the DHS file that would lead to 'discussion about the complaining witness's character for truthfulness or the propensity for truthfulness or untruthfulness and possible false allegations.'" *Id.*

A final pertinent example is *Bray*, in which the defendant claimed a constitutional right to obtain Google records of the victim's email and internet usage history, for the purpose of impeaching her testimony about internet activity. We held that the defendant failed to show that the information was material because he could show only a possibility that the "information could have resulted in an acquittal." 281 Or App at 600. We explained that, "although there is a *possibility* that the Google information could have

resulted in an acquittal, that possibility was a far cry" from showing that the information was material. *Id.* (emphasis in original); *see also West,* 250 Or App at 204 (explaining that the right to obtain "material" evidence is not a right to obtain "evidence of unknown import to test whether it helps or hurts his case" (citing *State v. Koennecke,* 274 Or 169, 183, 545 P2d 127 (1976))).

3. *Petitioner's showing*

In seeking to subpoena the victim, petitioner argued that D's affidavit showed that the victim possessed information that was material to whether his criminal trial counsel "adequately investigated the case and adequately cross-examined [the victim] or examined other witnesses about her motive to lie and conduct after the alleged crime" as well as to the issue of prejudice "from [trial counsel's] bad performance (because if [the victim] recanted to [D], she might if properly cross-examined have recanted to the jury as well—or at least testified in a way that might have led the jury to acquit petitioner)." Thus, the "material" information that petitioner hoped to obtain fell into two categories: information to confirm D's statements that, post-trial, the victim admitted to having provided false testimony and an entirely speculative category of other information that the victim *might* supply that *might* reveal areas of potential impeachment that petitioner's trial counsel missed through inadequate investigation or inadequate cross-examination. Neither category describes information that is a basis to allow the court to issue a subpoena to the victim.

Even if it were plausible that the victim now would admit that she perjured herself in the criminal trial, the test is not whether that information would have been material to the criminal trial; it is whether that information would be material to the post-conviction proceeding. Petitioner failed to explain how such an admission of perjury would have a reasonable probability of affecting the post-conviction court's determination of whether petitioner's counsel exercised reasonable professional skill and judgment or of whether any failure tended to affect the outcome of the criminal trial. The possibility that the victim lied about petitioner's actions was not new information; indeed, that was the core of petitioner's

defense at trial. Petitioner does not explain how having the victim admit, now, that she lied in the trial would make it any more probable that trial counsel could have elicited that admission through better cross-examination or by compelling her to take the stand as a defense witness.

With respect to the second category of information that petitioner hoped to obtain from the victim—testimony that might lead to other evidence that then might support the claim of ineffective assistance of counsel—the description is too speculative to show that the victim has information that is material and favorable. Petitioner has argued on appeal that, "if nothing else, [the victim] knows who she talked to, she knows who she shared her account with," and that her answers to that type of inquiry could have led to a "wider pool of witnesses" who might have had information that would cast doubt on the victim's credibility. But petitioner has no idea whether the victim's answers to such questions would provide information that would be material or favorable to the petitioner in the post-conviction proceeding. Instead, petitioner offered only "vague assertions" that the victim could possibly provide information "of unknown import" that petitioner would then explore to "test whether it helps or hurts his case," and that is not enough to show "that the victim has information that is material" to the proceeding. *See Wixom*, 275 Or App at 842; *West*, 250 Or App at 204. As we explained in *Bray*, showing the "possibility" that information could affect the outcome of the proceedings is "a far cry from" showing that the information is material. 281 Or App at 600.

Reversed and remanded on paragraph M of petitioner's seventh claim for relief, as to counsel's failure to object to physical restraint; otherwise affirmed.